**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

| | |
|---|---|
| IN THE STRUGGLE PRODUCTIONS LLC    : | |
| : | **COMPLAINT** |
| Plaintiff,    : | |
| : | **Index No. 1:24-cv-2776** |
| -against-    : | |
| : | |
| ROLAND COLLINS P/K/A "TROY AVE";    : | **JURY TRIAL REQUESTED** |
| BSB RECORDS, INC.; AND,;    : | |
| EMPIRE DISTRIBUTION, INC.    : | |
| : | |
| Defendants.    : | |

-------------------------------------------------------------------X

Plaintiff In The Struggle Productions Limited Liability Company (the "Plaintiff" or

"ITS") by and through its undersigned attorneys, Justin Jacobson Law, P.C., as for its Complaint

against Defendants ROLAND COLLINS professionally known as "TROY AVE" ("TROY

AVE"), BSB RECORDS, INC. ("BSB Records"), and EMPIRE DISTRIBUTION, INC.

("EMPIRE") (hereinafter collectively referred to as the "Defendants"), respectfully alleges upon

knowledge as to its own acts and upon information on the acts of others, as follows:

## I.   NATURE OF ACTION

1.   The importance of protecting the creator of an original artistic work and properly

incentivizing them through fair and just compensation combined with the enforcement of

their exclusive rights in their copyrighted work is deep-rooted within the U.S.

Constitution and further supported under the U.S. Copyright Act. Due to these

established principles, a party that spends their resources, talents, and time to fashion an

original work, such as a musical composition or recording, anticipates receiving

compensation for any commercial usage of it especially by a third-party. However, sadly,

many producers of original musical compositions and recordings are denied this

constitutionality rooted right due to the individual musicians and/or their licensees

including their recording labels, music publishers, and/or music distribution companies failing to secure proper rights to another's copyrighted work as well as failing to provide just, or any compensation at all, for the commercial exploitation and monetization of that copyrighted work.

2. Even worse is the situation at bar, where even after receiving numerous written notices, email correspondences, and engaging in extensive back and forth conversations for years with two different attorneys, no compensation or payment has ever been provided to or even offered in good faith to the owner of the musical work incorporated into a highly successful song. In fact, for almost a decade, the musician and his licensees continue to infringe the author's rights in the creation by the ongoing and uncompensated commercial exploitation and monetization of another's protected work amassing global notoriety and coverage in half a dozen major press and media outlets in addition to earning tens of millions of paid sales from both physical items as well as through digital streams, downloads, plays, views, and other monetized transactions while providing the exclusive rights holder and joint-owner of the song with nothing.

3.  Accordingly, the business model of utilizing the valuable intellectual property owned by the Plaintiff without paying or negotiating proper licensing has been an extremely lucrative practice for the Defendants who continue with its willful unauthorized usage and monetization of the Plaintiff's protected work despite receiving several notices of breaches and even after several valid "takedown" notices were filed by the Plaintiff. In fact, to continue to perpetuate this unlawful action, the Defendants filed counter-notices to fraudulently dispute the validly issued "takedown" notices submitted by the Plaintiff to permit the Defendants to continue its illegal monetization scheme further violating the

creator's rights in the protected work.

4. Despite the Defendants' continued unauthorized exploitation of the Plaintiff's work without compensation for nearly a decade, the Plaintiff reached out to the Defendants several times to attempt to negotiate and reach an agreement to receive the owed compensation as a co-owner of the song without any resolution or good faith efforts by the Defendants.

5. The law does not permit the kind of continuous and uncompensated infringement that the Defendants have committed. This action seeks to hold them responsible for the statutory and actual damages that they owe for the unlawful usage and monetization of the Plaintiff's uniquely valuable work as well as the Defendants other enumerated violations.

## II.  JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq* and the Declaratory Judgment Act 28 U.S.C. §§ 2201.

7. This Court has personal jurisdiction over the Defendants under 17 U.S.C. § 512(g)(3)(D) due to the Defendants submitting a counter-notification in response to the Plaintiff's "takedown" notice under the DMCA.

8. This Court also has personal jurisdiction over the Defendants because they have purposefully availed themselves of the privileges of conducting business in New York and the Defendants have directed their activities and marketing of the infringing compositions and recordings to New York residents, i.e., New York residents are able to purchase, download, and stream the infringing composition and recording.

9. The Defendants have engaged in systematic and continuous business activities relating to

the infringing composition and recording. As such, the Defendants have engaged in

continuing business activities in the instant jurisdiction including the marketing, sales,

and licensing of the infringing composition and recording within the District. Venue is

proper in this District under 28 U.S.C. § 1400(a) because Defendants EMPIRE, TROY

AVE, and BSB Records all reside in this District. Venue is also proper because a

substantial part of the events giving rise to the claims occurred in this District, 28 U.S.C.

§ 1391(b)(2).

10. The Defendants are, at a minimum, constructively aware of their continuous and

substantial commercial interactions with New York residents.

11. Defendant TROY AVE is a New York resident, so he is subject to personal jurisdiction in

this District, he has performed in New York, and he and the other Defendants have

authorized, organized, and promoted performances of the infringing composition and

recording numerous times in New York, as well as throughout the United States.

12. Defendant BSB Records is a New York corporation with its principal place of business

located in New York, so they are subject to personal jurisdiction in this District, and they

have committed unlawful acts of infringement in this District.

13. The Defendants have generated touring and recording revenues from the unauthorized

and unlawful exploitation of the infringing composition and recording, including

receiving substantial revenue from such exploitation in New York, as well as throughout

the United States. The Defendants have advertised the infringing composition and

recording to New York residents, as well as throughout the United States.

14. The Defendants, individually and collectively, have generated substantial revenue from

the exploitation of the infringing composition and recording in New York, and

throughout the United States.

15. Venue is proper in this District pursuant to 28 U.S.C §1391(b)(2), §1391(c), and §1400(a), respectively, because Defendant EMPIRE maintains an office and employs personnel in New York, so they are subject to personal jurisdiction in this District, and they have committed unlawful acts of infringement in this District. Further, a substantial part of the events that give rise to this claim, as described above, occurred in this District.

### III.   THE PARTIES

16. Plaintiff In The Struggle Productions Limited Liability Company is a New Jersey limited liability company ("ITS") with a principal place of business at 123 Town Square Place, #107, Jersey City, NJ 07310. ITS' registered agent is Jose Trespalacios at the address 123 Town Square Place, #107, Jersey City, NJ 07310. ITS regularly conducts business in New York. ITS' operates in New York including several of the recording studios that ITS works in. ITS is a music and entertainment production, publishing, and recording company that markets, promotes, and distributes original musical compositions and recordings as well as licenses original musical works to third parties such as record labels, musicians, and motion picture and television studios, on behalf of its rosters of musical acts and producers including but not limited to Mr. Ruben D. Sosa, Jr. professionally known as "Citoonthebeat" (hereinafter referred to as "CITO").

17. Defendant ROLAND COLLINS professionally known as "TROY AVE" ("TROY AVE") is a resident of the State of New York, and in any event, TROY AVE regularly conducts business in New York. TROY AVE is a musical artist who contracts with other musical producers and composers to create original musical compositions for him to perform such as CITO. He has generated considerable revenue from the exploitation of

the infringing composition and recording in New York, and throughout the United States. Upon further information and belief, TROY AVE entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing composition and recording in New York, and throughout the United States.

18. Upon information and belief, Defendant BSB Records, Inc. ("BSB Records") is a New Yok corporation with a principal place of business at P.O. Box 1951, Manhattanville Station, New York, NY 10027. BSB Records' registered agent is Fola Bell at P.O. Box 1951, Manhattanville Station, New York, NY 10027. BSB Records has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TROY AVE's songs including the infringing composition and recording in New York, and throughout the United States. BSB Records has generated substantial revenue from the exploitation of the infringing composition and recording in New York, and throughout the United States. Upon further information and belief, BSB Records entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing composition and recording in New York, and throughout the United States. BSB Records arranged for the distribution and commercial licensing of the infringing composition and recording and BSB Records is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing composition and recording in New York, and throughout the United States. Upon information and belief, BSB Records conducts systematic and continuous business in this District including having its principal place of business in New York and BSB Records has generated substantial revenue from the exploitation of the infringing composition and recording in this District. BSB Records has previously and continues to

offer for sale and has caused others to offer for sale the infringing composition and recording in New York, and throughout the United States. BSB Records has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing composition and recording in New York, and throughout the United States. Interestingly, as of the date of this filing, BSB Records' corporation was dissolved by proclamation, and BSB Records has been dissolved since as early as July 27, 2011 (Exhibit "A").

19. Defendant EMPIRE Distribution, Inc. ("EMPIRE") is a California corporation with a principal place of business at 235 Pine Street, San Francisco, CA 94104. EMPIRE's registered agent is Michael Gallegus at 235 Pine Street, San Francisco, CA 94104. EMPIRE has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TROY AVE's songs including the infringing composition and recording in New York and EMPIRE operates an office and employs personnel in New York. Upon further information and belief, EMPIRE entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing composition and recording in New York, and throughout the United States. EMPIRE arranged for the distribution of the infringing composition and recording, and EMPIRE is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing composition and recording in New York, and throughout the United States. Upon information and belief, EMPIRE conducts systematic and continuous business in this District and EMPIRE has generated substantial revenue from the exploitation of the infringing composition and recording in this District. EMPIRE has offered and continues to offer for sale and caused others to offer for sale, the infringing

composition and recording in New York, and throughout the United States. EMPIRE has sold and benefitted from and continues to sell and benefit from the sale and commercial exploitation of the infringing composition and recording in New York, and throughout the United States.

## IV. <u>FACTUAL ALLEGATIONS</u>

20. The Plaintiff is the sole owner and the exclusive rights holder to the musical compositions and recordings composed and created by Mr. Ruben D. Sosa, Jr. professionally known as "Citoonthebeat" ("CITO"). CITO is a popular rap, hip-hop, and pop music producer, songwriter, and creator of original musical compositions and recordings including crafting original musical instrumentals and "beats" for the sale, licensing, and usage by other musical acts such as Defendant TROY AVE (Exhibit "B").

21. As contracted with and on behalf of CITO, the Plaintiff has secured the exclusive rights in all the copyrighted works created by CITO and as a result, the Plaintiff issues licenses, sells, and otherwise exclusively exploits the original compositions and recordings that CITO produces, including licensing, selling, and/or otherwise monetizing those creative works with other musical artists who prepare derivative works incorporating the original compositions and recordings such as Defendant TROY AVE.

22. CITO's compositions exemplify a prevalent and popular genre of music, which frequently combines elements of hip hop, R&B, and rap, among others. CITO has received critical acclaim for his prior releases with over a billion total digital streams and plays of original artistic works featuring his compositions and recordings. CITO has worked with many popular musical artists in the past decade on behalf of ITS including *Cardi B, Dave East, Y.G.*, *Ty Dolla Sign*, *Kevin Gates*, *Tory Lanez*, and *Lil Yachty*,

among many others. CITO has achieved extensive notoriety for his successfully produced and created musical works and as a result, the usage of his name, image, and likeness as well as his tradename has a substantial commercial value when utilized or referred to in connection with a musical composition or recording. CITO has had prior produced compositions and recordings created on behalf of ITS certified Gold by the RIAA for selling over 500,000 copies in the U.S. alone, which has made him one of the top producers in the industry (Exhibit "C").

23. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the musical composition "*Light Up*" (hereinafter referred to as the "Registered Work"). The musical composition contained in the Registered Work is an original work, copyrightable under the Copyright Act. Thus, the Plaintiff has exclusive rights and privileges to reproduce, distribute, and license the musical composition contained in the Registered Work for any other medium, including a sound recording. The musical composition was properly registered with the United States Copyright Office on June 9, 2019, as Registration No. PA-2-190-139. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "D".

24. The Plaintiff is the owner of a federally registered U.S. trademark in "Citoonthebeat" (U.S. Reg. No. 7,187,398) in International Class 041 for "Music production services," "Production of music," and "Entertainment services in the nature of recording, production and post-production services in the field of music" (hereinafter referred to as the "CITO Trademark"). The CITO Trademark was properly registered with the United States Patent and Trademark Office on October 10, 2023, with a date of first use as early as January 1, 2006. The Trademark Registration Certificate reflecting the foregoing

registration is attached hereto as Exhibit "E".

25. Upon reasonable information and belief, ROLAND COLLINS professionally known as "TROY AVE" is an international hip-hop artist based in New York.

26. Upon reasonable information and belief, TROY AVE has achieved extensive commercial success including being selected to *XXL Magazine*'s prestigious *XXL Freshmen Class of 2014* while also having his first studio album, *"New York City: The Album"* debuting in the top 50 on the U.S. *Billboard Magazine* Top R&B/Hip-Hop Albums chart. Additionally, further exemplifying the level of his success, TROY AVE has amassed hundreds of millions of compensated digital streams and plays including on *Spotify* and *YouTube*, among other commercial physical and digital media outlets (Exhibit "F").

27. Upon reasonable information and belief, Defendant TROY AVE entered into a distribution agreement with Defendant EMPIRE (hereinafter referred to as the "Empire Recording Agreement") as it relates to TROY AVE's musical works which include the original composition and recording contained in the Registered Work created and owned by the Plaintiff (Exhibit "G").

28. On or about December 22, 2016, Defendants TROY AVE through its authorized distributor Defendant EMPIRE and Defendant BSB Records, commercially released the sound recording *"Chuck Norris"* also known as *"Chuck Norris (Hoes & Gangstas)"* (collectively hereinafter referred to as the "Infringing Work") that contained the Registered Work owned by the Plaintiff. The Infringing Work was commercial released by the Defendants on all major digital and physical content distribution platforms including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, the *iTunes Store*, *YouTube*, *Amazon Music*, and other monetized distribution systems without

compensation or any written or other authorization or consent from the Plaintiff (Exhibit "H").

29. The Infringing Work and the Registered Work contain identical instrumental and non-vocal elements, with the only difference between the two works being the addition of a vocal performance by Defendant TROY AVE on the Infringing Work.

30. Defendant TROY AVE's derivative work includes the CITO watermark throughout identifying the work as the Plaintiffs.

31. As customary for the owner of the composition contained in the Infringing Work, CITO, as the creator of the musical composition embodied in the Infringing Work was and is still currently publicly credited as "*Produced by Citoonbeat*" on various *YouTube* videos, on *SoundCloud*, in the *Shazam* app credit listing, and in the *Apple Music* credit listing, among other public outlets. Additionally, on behalf of the Plaintiff, CITO was also publicly credited as the producer of the Infringing Work by various press outlets as well as on the official track listings including but not limited to in *XXL Magazine*, *The Source*, *On Smash*, *Respect Magazine*, and *HipHopDX* (Exhibit "I").

32. The Infringing Work that contains the Registered Work was released to critical and commercial success, including receiving notable global press and media coverage in many popular music and entertainment publications including but not limited to *Billboard Magazine*, *Vibe Magazine*, *The Source*, *XXL Magazine*, *Uproxx*, *Rap Radar*, *Rap-Up*, *The Hype Magazine*, among many others (Exhibit "J").

33. In fact, to date, the Infringing Work that contains the Registered Work has garnered nearly 12 million compensated streams on *Spotify*, over 1.7 million plays on *YouTube*, as well as nearly 250,000 plays on *Soundcloud* while all the earned revenues from the

Infringing Work that contains the Registered Work was provided to the Defendants while nothing was paid to the Plaintiff. The Infringing Work that contains the Registered Work continues to receive millions of compensated plays on *Spotify* as well as on many other commercial distribution channels with these additional transactions solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing in further violation of the Plaintiff's rights in the Registered Work (Exhibit "K").

34. Accordingly, the Infringing Work containing the Plaintiff's Registered Work was released nearly a decade ago with the Defendants providing no compensation whatsoever and receiving no written authorization from the Plaintiff to release and/or otherwise monetize the Registered Work contained in the Infringing Work as no agreement or other written instrument was ever executed or even offered to the Plaintiff to properly secure rights to utilize the Registered Work contained in the Infringing Work. Therefore, the Infringing Work was released without authorization and compensation in violation of the Plaintiff's rights in the musical composition and recording contained in the Registered Work which was later incorporated into the Infringing Work by Defendant TROY AVE.

35. To date, the Infringing Work containing the Plaintiff's Registered Work, which was released nearly ten years ago, has achieved hundreds of millions of compensated streams as well as physical and digital sales with the Defendants continuing to earn daily income through additional monetized uses without providing any compensation to the Plaintiff for the revenues previously received by the Defendants for the exploitation of the Infringing Work (Exhibit "K").

36. Moreover, the Infringing Work containing the Plaintiff's Registered Work achieved commercial success on relevant music charts, was featured in a popular music video and

on social media, has been performed by and continues to be a staple of Defendant TROY

AVE's live performances, and have all helped propel the Defendant TROY AVE to

further fame and success (Exhibit "K").

37. Moreover, and further violating the Plaintiff's rights, the Infringing Work containing the

Plaintiff's Registered Work is available for digital streaming on major streaming services

under completely false production credits as submitted by the Defendants. For example,

on *Spotify*, the song credit for "*Chuck Norris"* is fraudulently credited as the "Produced

By" credit line is noticeably blank as the song credit is missing CITO's name. This

material misrepresentation has previously and continues to prevent the Plaintiff from

receiving the proper public attribution, notoriety, and credit customary and as is required

as a co-owner of the Infringing Work. Accordingly, this action by the Defendants is

another harmful violation of Plaintiff's rights in the Registered Work. Similarly, the

Plaintiff was noticeably and wrongfully not included in the *B.M.I.* Work listing for

"*Chuck Norris*" as only Defendant TROY AVE was listed as an author or composer of

the Infringing Work while CITO should have been included as well which has prevented

the Plaintiff from receiving its just public performance royalties related to the Infringing

Work (Exhibit "L").

38. The Plaintiff has never been paid any royalties or any income for Defendant TROY

AVE's derivative work, the Infringing Work including for revenues generated before

December 22, 2016, when the beat was being used in a completely unauthorized manner,

or after December 22, 2016, during which the Plaintiff should have been receiving

publishing and mechanical royalties, among other income.

39. The Plaintiff first published the original composition and recording contained in the

Registered Work on February 17, 2016.

40. Upon information and belief, the Defendants received the Registered Work from the Plaintiff to utilize in the Infringing Work with the knowledge that the Plaintiff expected and anticipated receiving revenues and compensation upon the commercial exploitation and usage of the Registered Work contained in the Infringing Work.

41. The Registered Work is strikingly similar to the Infringing Work and the Infringing Work adopted all the elements of the recording and compositional copyright of the Plaintiff's Registered Work.

42. The Infringing Work is a completely unauthorized use and derivative work of the Plaintiff's Registered Work, including the composition and recording.

43. The Defendants are well-aware of the Defendants' unauthorized use of the Registered Work contained in the Infringing Work as the Defendants reached out to the Plaintiff several times about the Infringing Work but still continues to monetize the Infringing Work while paying the Plaintiff nothing.

44. Accordingly, the Defendants had actual knowledge that the Plaintiff received zero compensation for usage of the Registered Work contained in the Infringing Work.

45. In fact, on or about December 18, 2018, as a result of the Defendants extensive unauthorized and uncompensated illicit usage of the Registered Work owned by the Plaintiff, Plaintiff's prior counsel Jeffrey M. Wooten, Esq. notified Vinny Kumar, Esq., the "Senior Vice-President, Global Head of Business" at Defendant EMPIRE by electronic mail (hereinafter referred to as the "Email Notice #1"). The Email Notice #1 informed the Defendants of its failure to remedy its previous and current violations of the Plaintiff's rights in the Registered Work as well as demanded an offer of a "good faith

payment" to the Plaintiff who received no offer, answer, or response from the Defendants (Exhibit "M").

46. Nearly five years ago, on or about April 20, 2019, in response to the Defendants' continued and extensive unauthorized and uncompensated exploitation of the Infringing Work containing the Plaintiff's Registered Work, the Defendants were again notified by Plaintiff's prior counsel Jeffrey M. Wooten, Esq. of the Defendants' ongoing infringements of the Registered Work contained in the Infringing Work including specifically confirming that the Defendants never received authorization or permission to distribute, commercialize, exploit, market, and/or promote the Registered Work contained in the Infringing Work by electronic mail and by certified mail with a return receipt requested (hereinafter referred to as the "Breach Notice #1"). The Breach Notice #1 also demanded that the Defendants provide an immediate accounting and payment of no less than fifty (50%) percent of the monies earned by the Defendants through the unauthorized release and commercial exploitation of the Infringing Work that contained the Registered Work as the Plaintiff is a co-owner and a joint-author of the Infringing Work commercially distributed by the Defendants without payment or proper permission (Exhibit "N").

47. Despite the Defendants receiving the Breach Notice #1 wherein the Plaintiff requested that the Defendants provide the Plaintiff with the then owed compensation and an accounting, the Defendants completely disregarded the written requests listed in the Breach Notice #1 and instead the Defendants continued to willfully exploit and monetize the Infringing Work that contained the Registered Work without permission or compensation to the Plaintiff, which uses constitute copyright infringement.

48. Later, on or about May 3, 2019, after receiving no response or acknowledgement from the Defendants, the Plaintiff's prior counsel Jeffrey M. Wooten, Esq. sent an additional follow-up letter to the Defendants to again demand that the Defendants immediately cease their ongoing unauthorized commercial distribution, exploitation, and monetization of the Registered Work contained in the Infringing Work by electronic mail and by certified mail with a return receipt requested (hereinafter referred to as the "Breach Notice #2"). The Breach Notice #2 also again instructed the Defendants to immediately provide an accounting to the Plaintiff for the monies earned through the unauthorized exploitation of the Registered Work contained in the Infringing Work as well as again requested the payment of no less than fifty (50%) percent of all of the income generated by the Defendants through the unauthorized release and commercial exploitation of the Infringing Work that contained the Registered Work (Exhibit "O").

49. Subsequently, on or about September 10, 2020, over two years after the Defendants originally received several written notices of its ongoing violation of the Plaintiff's rights, the Plaintiff filed a formal "EMPIRE Infringement Claim" addressed to "legal@empi.re" wherein the Plaintiff demanded the immediate removal of the Infringing Work that contained the Registered Work from *Spotify* and other digital distribution platforms unless the Defendants provided just compensation to the Plaintiff for the Defendants' unauthorized commercial release of the Infringing Work containing the Plaintiff's Registered Work (hereinafter referred to as the "Email Notice #1") (Exhibit "P").

50. On or about September 14, 2020, in response to the Email Notice #1 sent by the Plaintiff, Defendant EMPIRE through its "legal@empi.re" email account stated that "the licensor [Defendants TROY AVE and BSB Records] of the content [Infringing Work] represented

they had the full right and power to grant EMPIRE [Defendant EMPIRE] exclusive distribution rights in the content [Infringing Work]. We're [Defendant EMPIRE] currently investigating this matter." Again, further exemplifying the Defendants' bad faith in this matter and contrary to Defendant EMPIRE's written representation to the Plaintiff in response to Email Notice #1, the Defendants did not "investigate" or seem to conduct any reasonable inquiry (or one at all) into the matter as it is clear that Defendant EMPIRE erroneously stated that Defendants TROY AVE and BSB Records did and currently possess the "full right and power" to "exclusive[ly] distribute" the "content [Infringing Work]" as Defendants TROY AVE and BSB Records never secured rights to the composition and recording contained in the Plaintiff's Registered Work that was subsequently commercialized and incorporated into the Infringing Work by Defendant TROY AVE (Exhibit "P").

51. Nearly two years later, even after receiving several written notices and copyright claim notices, on or about July 8, 2022, in response to the Defendants' willful and ongoing unauthorized and uncompensated exploitation of the Infringing Work containing the Plaintiff's Registered Work for nearly half a decade, the Defendants were notified by Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. of the Defendants' ongoing infringements of the Registered Work contained in the Infringing Work including specifically confirming that the Defendants never executed any agreement nor reached any arrangement with the Plaintiff related to the authorized distribution, commercialization, exploitation, marketing, and/or promotion of the Registered Work contained in the Infringing Work by electronic mail and by U.S. mail (hereinafter referred to as the "Breach Notice #3"). Similar to the Breach Notice #1 and

the Breach Notice #2, the Breach Notice #3 again demanded that the Defendants deliver

an accounting of the income earned via the exploitation of the Infringing Work

containing the Registered Work as well as to provide payment to the Plaintiff of no less

than fifty (50%) percent of the monies earned by the Defendants for the unauthorized

release and commercial exploitation of the Infringing Work that contained the Registered

Work as the Plaintiff is a rightful co-owner and joint-author of the Infringing Work that

was commercially distributed by the Defendants without payment or proper permission

(Exhibit "Q").

52. In response to the Breach Notice #3, on or about July 14, 2022, the counsel for

Defendants TROY AVE and BSB Records Vinny Kumar, Esq. acknowledged receipt of

the Breach Notice #3 and stated via email correspondence to the Plaintiff's current

counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C., to Mike Gallegus, the

"VP, Business & Legal Affairs" for Defendant EMPIRE, to Benedict Paz, the "Director

of Business Affairs & A&R Administration" for Defendant EMPIRE as well as to Sarah

Christle, the former "Director of Artist Royalties" for Defendant EMPIRE that "I haven't

spoken with Troy [Defendant TROY AVE] in a while so I'm trying to get a hold of him

[Defendant TROY AVE]." This written statement by Defendants TROY AVE and BSB

Records' counsel confirmed the receipt of the notice as the Defendants' counsel stated

that they would investigate the matter (Exhibit "R").

53. Consequently, even after the Defendants received and acknowledged the owed payments,

the existing and continuous infringement of the Registered Work contained in the

Infringing Work as stated in the Breach Notice #3, among other written notifications, the

Defendants still failed to remedy or otherwise cure the listed deficiencies in the Breach

Notice #3. Accordingly, on or about July 29, 2022, the Defendants were provided with another formal breach notice by electronic mail wherein the Defendants were again notified by the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. of the Defendants' still outstanding payment obligations and demanding that the Defendants' immediately cease its ongoing willful infringement of the Registered Work contained in the Infringing Work (hereinafter referred to as the "Breach Notice #4"). Despite receiving the Breach Notice #4, the Defendants again disregarded the contentions contained in the notice and continued to willfully exploit the Infringing Work containing the Registered Work without permission or compensation to the Plaintiff, which constitute additional examples of willful copyright infringement (Exhibit "S").

54. In response to the Breach Notice #4, on or about July 29, 2022, the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. acknowledged receipt of the Breach Notice #4 and stated via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that "I haven't heard back from Troy [Defendant TROY AVE]. I will follow up next." This written statement by Defendants TROY AVE and BSB Records' counsel almost two years ago confirmed the receipt of the notice as Defendants TROY AVE and BSB Records' counsel stated that they would follow up next week about matter (Exhibit "T").

55. Accordingly, even after the Defendants received the Breach Notice #1, the Breach Notice #2, the Breach Notice #3, and the Breach Notice #4 (collectively hereinafter referred to as the "Breach Notices"), the Defendants repeatedly ignored the written contentions of the Plaintiff and continued to willfully exploit the Infringing Work containing the Plaintiff's Registered Work without permission or compensation to the Plaintiff, which constitutes

additional examples of willful copyright infringement.

56. As a result of the Defendants continued willful infringement and wrongful monetization of the Registered Work contained in the Infringing Work without any compensation to or proper rights from the Plaintiff and in an attempt to mitigate the Plaintiff's damage and to protect Plaintiff's rights in the Registered Work, taking into account the lack of any reasonable or plausible "fair use" claim by the Defendants, in or about August 2022, the Plaintiff through its authorized representative Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. filed a series of "takedown" notices under the Digital Millennium Copyright Act ("DMCA") against the Infringing Work that incorporated the Registered Work that is and has previously been unlawfully displayed and offered for sale as digital download files, audio-visual works, and musical streams, including submitting appropriate DMCA takedown notices to *Spotify* (filed on August 2, 2022), *Facebook* (filed on August 2, 2022), *Pandora* (filed on August 2, 2022), *Apple Music* (filed on August 2, 2022), *SoundCloud* (filed on August 2, 2022), *Tidal* (filed on August 2, 2022), *Audiomack* (filed on August 1, 2022), and *YouTube* (filed on August 2, 2022) (hereinafter collectively referred to as the "DMCA Takedown Notices") (Exhibit "U").

57. On or about August 1, 2022, in response to the DMCA Takedown Notices issued by the Plaintiff, similar to the previous responses provided by Defendant EMPIRE to the Plaintiff, Defendant EMPIRE through its "legal@empi.re" email account again stated via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C., to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE, to Benedict Paz, the "Director of Business Affairs & A&R Administration" for Defendant EMPIRE as well as to Matthew Meneses, the "Director of

Business and Legal Affairs" for Defendant EMPIRE that "the licensor [Defendants TROY AVE and BSB Records] of the content [Infringing Work] represented they had the full right and power to grant EMPIRE [Defendant EMPIRE] exclusive distribution rights in the content [Infringing Work]. We're [Defendant EMPIRE] currently investigating this matter." Again, further exemplifying the Defendants' willful deceit in this matter and contrary to Defendant EMPIRE's written representation to the Plaintiff in response to the DMCA Takedown Notices, the Defendants still did not "investigate" or conduct any inquiry at all into the matter as it is clear that Defendants TROY AVE and BSB Records did not and currently does not possess the "full right and power" to "exclusive[ly] distribute" the "content [Infringing Work]" as Defendants TROY AVE and BSB Records never secured rights to the composition and recording contained in the Plaintiff's Registered Work that was subsequently incorporated into the Infringing Work by Defendant TROY AVE (Exhibit "V").

58. Later, on or about August 4, 2024, in response to the DMCA Takedown Notices issued by the Plaintiff, similar to the previous responses provided by Defendant EMPIRE, Defendant EMPIRE through its "legal@empi.re" email account again stated via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. and to Mike Gallegus, the "VP, Business & Legal Affairs" for Defendant EMPIRE that "the licensor [Defendants TROY AVE and BSB Records] of the content [Infringing Work] represented they had the full right and power to grant EMPIRE [Defendant EMPIRE] exclusive distribution rights in the content [Infringing Work]. We're [Defendant EMPIRE] currently investigating this matter." Again, further illustrating the Defendants' continued deliberate intent in this matter and contrary to

Defendant EMPIRE's repeated written representations to the Plaintiff in response to the DMCA Takedown Notices, the Defendants still did not "investigate" or undertake any review of the matter as it is clear that Defendants TROY AVE and BSB Records did not and currently does not hold the "full right and power" to "exclusive[ly] distribute" the "content [Infringing Work]" as Defendants TROY AVE and BSB Records never secured rights to the composition and recording contained in the Plaintiff's Registered Work that was subsequently incorporated into the Infringing Work by Defendant TROY AVE (Exhibit "W").

59. On or about August 9, 2022, the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. sent a follow-up email correspondence to counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. inquiring into the status of the promised proposal to which Defendants TROY AVE and BSB Records Vinny Kumar, Esq. stated that "I have a call scheduled with Troy [Defendant TROY AVE] today [August 9, 2022]" (Exhibit "X").

60. Subsequently, on or about August 10, 2022, the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. stated via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that Defendant TROY AVE was offering "$2,500 producer advance," "20% of net receipts from "Chuck Norris" [Infringing Work], [and a] 47% publishing split for your client [Plaintiff] …" Accordingly, as a result of the written acknowledgement of the Plaintiff's rights in and to the Infringing Work by the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq., it is clear that the offer was provided in bad faith to the Plaintiff as the offered "producer advance" payment was well below the rate that the Plaintiff typically

receives on behalf of CITO and upon information and belief, the proffered amount is merely a small fraction of the actual income earned through the exploitation of the Infringing Work containing the Registered Work (Exhibit "Y").

61. Later, on or about August 10, 2022, the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that "We [Defendants TROY AVE and BSB Records] requested an accounting for this song [Infringing Work] from inception" and that "We [Defendants TROY AVE and BSB Records] were told it would take a few days to run the report." Furthermore, in the same email correspondence, the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. stated via email correspondence to the Plaintiff's counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. that "the gross royalties for this song [Infringing Work] are far below $250k" and that "my client [Defendants TROY AVE and BSB Records] is definitely willing to work this out…" Contrary to written statements by Defendants TROY AVE and BSB Records counsel, Defendants did not aim to work out an appropriate arrangement while reportedly grossing nearly "$250k" (if not, much more) (Exhibit "Z").

62. On or about August 15, 2022, the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. sent another follow-up email correspondence to counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. inquiring into the status of the promised royalty accounting statement to which Defendants TROY AVE and BSB Records Vinny Kumar, Esq. stated that "the song [Infringing Work] earned (in total) $87,792.87." Interestingly, while the Defendants counsel stated that the Infringing Work containing the Plaintiff's Registered Work purportedly earned nearly $90,000 as of two

years ago, the Plaintiff has received nothing to date and the Defendants presumptively received th entire amount (Exhibit "AA").

63. In further violation of the Plaintiff's rights and in direct violation of § 512(f)(2) of the DMCA Act, on or about August 29, 2022, "Create Music Group," upon information and belief, an authorized licensee of Defendant EMPIRE, knowingly and materially misrepresented that the DMCA Takedown Notices filed by the Plaintiff were a "mistake" or alternatively, a "misidentification" made by the Plaintiff by filing a false counter-notice with *YouTube* and with other digital music distributors and internet service providers ("ISPs") under § 512(g) of the DMCA Act (hereinafter collectively referred to as the "DMCA Counter-Notices"). Specifically, "Create Music Group," upon information and belief, an authorized licensee of Defendant EMPIRE, disputed the contents of the DMCA Takedown Notices rightfully filed by the Plaintiff. In fact, in the DMCA Counter-Notices, upon information and belief, an authorized licensee of Defendant EMPIRE, "Create Music Group" through its authorized representative Nadeem Mirza stated that "under penalty of perjury, that I [licensee on behalf of Defendant EMPIRE] have a good faith belief the material [Infringing Work] was removed due to a mistake or misidentification of the material to be removed or disabled" and that "Create Music Group," upon information and belief, as an authorized licensee of Defendant EMPIRE, had the "full right and power to grant […] exclusive rights right the content [Infringing Work]." It is clear and indisputable that Plaintiff owns rights in the Registered Work contained in the Infringing Work and that Defendant EMPIRE's licensee's actions are not protected by "Fair Use" and that "Create Music Group," upon information and belief, as an authorized licensee of Defendant EMPIRE, clearly had no good faith or reasonable

belief that the DMCA Takedown Notices filed by the Plaintiff were a "mistake" or "misidentification." Accordingly, these wrongful and fraudulent actions perpetuated by "Create Music Group," upon information and belief, as an authorized licensee of Defendant EMPIRE, which are explicitly authorized by Defendant EMPIRE, have previously and are currently continuing to cause substantial damage to the Plaintiff (Exhibit "BB").

64. Specifically and further highlighting the Defendants' continued bad faith and improper actions directed at harming the Plaintiff's business interests, as a result of the DMCA Counter-Notices fraudulently filed by "Create Music Group," upon information and belief, as an authorized licensee of Defendant EMPIRE, the Infringing Work that was previously rightfully removed and disabled as a result of the Plaintiff utilizing the DMCA Takedown Notices was subsequently reinstated by *YouTube* (among other digital distribution platforms) thereby reenabling the infringing content and allowing the Defendants to continue perpetuating its unlawful and willful infringement of the Registered Work and in furtherance of the Defendants' ongoing violation of the Plaintiff's rights in the Registered Work. To date, the Infringing Work containing the Registered Work identified in the DMCA Takedown Notices filed by the Plaintiff continues to be monetized by the Defendants as a result of "Create Music Group," upon information and belief, as an authorized licensee of Defendant EMPIRE's filing of the DMCA Counter-Notices.

65. Subsequently, on or about September 20, 2022, a *Microsoft Excel* spreadsheet document purporting to be an "accounting statement" was provided by the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. via email correspondence to the

Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. stating that "Troy's [Defendant TROY AVE] expenses (video, promotion, artwork, studio, mixing & mastering) on the record [Infringing Work] were: $59,200" (hereinafter referred to as the "Excel Accounting Statement") (Exhibits "CC" & "DD").

66. In response to the provided Excel Accounting Statement, the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. asserted via email correspondence to the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. that the Excel Accounting Statement was one that was seems to be "put together instead of providing a formal and official accounting" to the Plaintiff. In response to this written contention, the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. stated that "this [the Excel Accounting Statement] is not an accounting that I came up with. This [the Excel Accounting Statement] came directly from the accounting department at EMPIRE [Defendant EMPIRE]" (Exhibit "EE"). Contrary to the assertions to the validity of the Excel Accounting Statement provided by the Defendants TROY AVE and BSB Records Vinny Kumar, Esq. via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C., the provided "accounting statement" does not contain any sufficient and specific information on the song's sales figures which are commonly included in these types of documents nor does it possess any identifying information of the issuing party including listing any of the Defendants. In fact, a valid music royalty accounting statement contains highly detailed information on the remitting and receiving parties while also listing each digital platform and revenue channel that all the listed sums

originate from, which is standard and established under long-standing industry custom and practice. However, instead of providing a valid royalty accounting statement to the Plaintiff as is industry custom, the Excel Accounting Statement provided by the Defendants seemed to be entirely fabricated and was provided in bad faith by the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. In particular, the "accounting statement" was merely a list of track names with arbitrary and unsubstantiated monetary figures listed next to each composition signifying the amount of the Plaintiff's income without any specific information normally contained in or associated with these types of accounting statements. Accordingly, it is clear that the Excel Accounting Statement provided by the counsel for Defendants TROY AVE and BSB Records Vinny Kumar, Esq. via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. is not a valid accounting statement and that the Excel Accounting Statement is certainly not in a proper format and it does not contain any of the required and industry custom information that suffices or otherwise fulfills the Defendants' duties and obligations to the Plaintiff and these actions constitute additional violations of the Plaintiff's rights (Exhibit "FF").

67. It is clear that the Defendants had actual knowledge that the Plaintiff had received zero compensation for the recording and composition contained in the Registered Work owned by the Plaintiff that was incorporated into the Infringing Work while the Infringing Work is continually generating revenue through the Defendants' unlawful monetization of it.

68. In fact, in response to the Plaintiff's several written requests for payment, income accounting statements, and proper producer credits and royalties, the Defendants continued to tell the Plaintiff that they would "like to find a solution," yet the Defendants never attempted to make good faith or any efforts at all on its repeated promises to do just that.

69. While the Infringing Work containing the Registered Work has generated almost a decade of streaming and sales revenue, among other income, the Defendants never paid the Plaintiff any income or royalties based upon any of these revenues. In fact, it is clear that substantial revenue is generated daily as prior to the viewing of and/or during the Infringing Work containing the Registered Work on *YouTube*, an advertisement appears for which the Defendants are entitled to and do receive a royalty or other revenue from, which is the Plaintiff's money.

70. Even after receiving the Breach Notices, the Email Notice #1, and the DMCA Takedown Notices, the Defendants still continued with its ongoing infringing actions which constitute actionable willful infringement of the Plaintiff's rights in the Registered Work.

71. Despite the Breach Notices, the Email Notice #1, and the DMCA Takedown Notices provided by the Plaintiff to the Defendants, all of the Defendants have still continued to infringe the Plaintiff's Registered Work. The infringement by the Defendants is willful, as evidenced by its continuing to infringe the Registered Work even after the Breach Notices, the Email Notice #1, and the DMCA Takedown Notices were provided and acknowledged by them.

72. In sum, the Plaintiff has not been paid any royalties from the Defendants as it relates to the Infringing Work containing the Registered Work, despite the composition and

recording contained in the Registered Work being used in a song that has millions of monetized transactions across all major platforms.

73. To date, each of the Defendants reproduced, distributed, publicly performed and/or authorized the reproduction, distribution, and public performance of the Registered Work owned by the Plaintiff that is incorporated into the Infringing Work and each of the Defendants continues to infringe the Registered Work.

74. Accordingly, the Plaintiff institutes the instant copyright infringement and breach of contract action because Defendant TROY AVE and the other Defendants in this action have knowingly, willing, and continuously of the Registered Work owned by the Plaintiff without authorization and without compensation in violation of the law.

75. The Defendants knowingly and intentionally infringed Plaintiff's rights including fraudulently opposing validly issued the DMCA Takedown Notices by filing the DMCA Counter-Notices. The Defendants' collective knowledge and intent is established by, among other things, the fact that Defendants, to this day have neither sought nor obtained a license from the owners of the rights nor provide any promised payment or an industry standard royalty accounting statement. All conditions precedent to the maintenance and/or establishment of the instant action have been satisfied and/or, otherwise, waived by the Defendants.

### FIRST CAUSE OF ACTION
### (Willful Copyright Infringement – 17 U.S.C. 101, *et. seq.*)
**Against All Defendants**

76. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

77. Upon information and belief, the Defendant, TROY AVE, infringed on the Plaintiff's

exclusive copyright in the Registered Work when TROY AVE distributed and sold a sound recording, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying the Registered Work and by distributing and broadcasting the Registered Work on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, the *iTunes Store*, *YouTube*, *Amazon Music*, selling recordings of the Registered Work, and publicly performing of the Registered Work live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant TROY AVE has realized illegal revenues.

78. Upon information and belief, the Defendant, BSB Records, infringed on the Plaintiff's exclusive copyright in the Registered Work when it distributed and sold a sound recording, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying the Registered Work and by distributing and broadcasting the Registered Work on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, the *iTunes Store*, *YouTube*, *Amazon Music*, selling recordings of the Registered Work, and authorizing the public performance of the Registered Work live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant BSB Records has realized illegal revenues.

79. Upon information and belief, the Defendant, EMPIRE, also infringed on the Plaintiff's exclusive copyright in the Registered Work under the Copyright Act when it distributed and sold a sound recording, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying the Registered Work and by distributing and broadcasting the Registered Work on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, the *iTunes Store*, *YouTube*, *Amazon Music*, selling recordings of the Registered Work, and authorizing the public performance of the Registered Work live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant EMPIRE has realized illegal revenues.

80. Upon information and belief, the Defendants' reproduction, distribution, and public performances of the Registered Work in the United States and internationally, continue to this day, and the Defendants have not deigned to compensate the copyright owner of the Registered Work.

81. Upon information and belief, the Defendants' reproduction, distribution, public performance, streaming, concerts, merchandizing, synchronization, licensing and economic exploitation of the Registered Work, and authorizing others to do the same, infringes the Plaintiff's exclusive rights in the Registered Work under Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

82. Upon information and belief, the foregoing acts of infringement that the Defendants have committed are all deliberately, willfully, intentionally, maliciously, and oppressively,

without regard to the Plaintiff's proprietary rights and are in total disregard of and indifference to the Plaintiff's rights in the Registered Work.

83. Upon information and belief, the Defendants infringed the Plaintiff's exclusive copyright in Registered Work when they issued and/or authorized others to issue licenses to third parties for the use, publication, and/or exploitation of the Registered Work without any compensation or payment to the Plaintiff. Said licenses were issued without any consent or authority from the copyright owner, the Plaintiff due to failing to compensate the Plaintiff for such licenses. By virtue of these unauthorized commercial exploitations, the Defendants have realized illegal revenues.

84. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the Registered Work, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

85. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the Registered Work, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

86. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per infringement for the Defendants' willful infringement of the Registered Work since the infringement of the Registered Work occurred after the copyrights was registered and occurred after the Registered Work had already been published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

87. The Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

88. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work containing the Registered Work including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

89. Due to the Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for the infringement of the Plaintiff's rights in the Registered Work. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringements of the Registered Work in an amount to be established at trial.

90. Plaintiff is informed and believes and now alleges that the Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

### SECOND CAUSE OF ACTION
### (For Vicarious and/or Contributory Copyright Infringement – 17 U.S.C. 101, *et. seq.*)
### Against All Defendants

91. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in

the preceding Paragraphs of the Complaint as if they were fully set forth herein.

92. Upon information and belief, the Plaintiff now alleges that the Defendants, and each of them, are contributorily and/or vicariously liable for the infringement and infringing conduct of others alleged herein because the Defendants, and each of them, had the right and ability to supervise the infringing conduct and because the Defendants, and each of them, had a direct financial interest in the infringing conduct and the Defendants knowingly induced, participated in, caused, materially contributed to, aided and abetted in and profited from the illegal reproduction, distribution, and publication of the Infringing Work containing the Registered Work as alleged above. The Defendants, and each of them, had the ability to oversee the publication and distribution of the Infringing Work containing the Registered Work and underwrote, facilitated, and participated in the other Defendants' infringement of the Registered Work. Defendants, and each of them, realized profits through their respective reproduction, distribution, and publication of the Registered Work.

93. With knowledge of the infringement, the Defendants, and each of them, have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

94. The Defendants, and each of them, had the right and ability to control other infringers and the Defendants, and each of them, have derived a direct financial benefit from that infringement such that the Defendants should be found to be vicariously liable.

95. The infringement is continuing as the Registered Work contained in the Infringing Work continues to be sold and the Registered Work contained in the Infringing Work continues to be licensed for sale, download, ringtones, streaming, and other exploitations by the

Defendants, or their agents without any compensation to the Plaintiff.

96. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

97. As a direct and/or proximate result of the Defendants' acts of contributory and vicarious infringement on the Plaintiff's exclusive copyright in Registered Work as alleged above, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

98. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per infringement for the Defendants' willful infringement of the Registered Work since the infringement of the Registered Work occurred after the copyright was registered and occurred after the Registered Work had already been published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

99. The Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

100. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work containing the Registered Work, including all infringing works or uses derivative thereof, in all

formats, configurations and/or media.

101. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that the Defendants would not otherwise have realized but for their infringement of the Plaintiff's rights in the Registered Works. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringement of the Plaintiff's rights in the Registered Work in an amount to be determined at trial.

102. The Plaintiff is informed and believes and now alleges that the Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting the Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## THIRD CAUSE OF ACTION
### (Common Law Unfair Competition By Misappropriation)
#### Against All Defendants

103. The Plaintiff licenses original musical compositions and recordings created by its signed and financed musicians for its work, including CITO, which often takes the form of original instrumentals and recordings, at a substantial cost to the Plaintiff. The Defendants likewise creates and releases and monetizes original music to the public including musical works like the Plaintiff.

104. By offering the Infringing Work containing the Registered Work that was created and owned by the Plaintiff, which is the same content licensable by the Plaintiff, the Defendants directly compete with the Plaintiff's work. The Defendants' use of the Plaintiff's work misappropriated the fruit of the Plaintiff's labors and usurps the specific

commercial opportunities of the Plaintiff, such as the revenue generated by licensing, selling, or otherwise monetizing the musical compositions and recordings contained in the Registered Work elsewhere. For example, failing to contract with the Plaintiff for the exclusive rights to the Registered Work contained in the Infringing Work has resulted in the failure to provide any payment or compensation at all, and as a result, the Defendants have deprived the Plaintiff of the opportunity to receive alternative revenue through the sale or licensing of the musical composition and recording in the Registered Work contained in the Infringing Work elsewhere due to the Defendants incorporating, monetizing, and appropriating that opportunity for solely for the Defendants thereby prohibiting any other musical artist from commercializing or obtaining the musical composition and recording contained in the Registered Work from the Plaintiff for just compensation.

105. The Defendants' uses, including the release of the musical composition and recording of the Infringing Work that contained the Registered Work, directly competes with the Plaintiff's uses and impairs the Plaintiff's ability to release, commercialize, and/or otherwise monetize the musical composition and recording contained in the Registered Work with others including other similar recording artists.

106. The Defendants' uses, including the release of the musical composition and recording owned by the Plaintiff contained in the Infringing Work without compensation or any payment to the Plaintiff constitutes free-riding on the Plaintiff's significant efforts and investment of human capital to create and license the musical composition and recording contained in the Registered Work.

107. The Defendants' misuse and misappropriation of the musical composition and recording contained in the Registered Work and subsequently incorporated into the Infringing Work has caused the Plaintiff to suffer actual damages from the deprivation of the benefits of its works, such as, without limitation, lost licensing, sales, and other related revenues.

108. As such, the Defendants engaged in unfair competition through fraud and/or bad faith and misappropriated the labor and expenditures of the Plaintiff for its own unjust and unlawful gain, and at the expense of the Plaintiff's own opportunities.

109. The Plaintiff suffered damages as a result of the Defendants unfair competition and misappropriation in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of Digital Millennium Copyright Act § 512(f)(1), (2) for Misrepresentation)
### Against All Defendants

110. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

111. The Plaintiff issued the DMCA Takedown Notices in the appropriate form and substance as required under the DMCA against the Defendants for its unauthorized usage and commercial use of the Registered Work incorporated into the Infringing Work as the Infringing Work was clearly an infringement as the Registered Work owned by the Plaintiff as the copyrighted work contained in the Infringing Work was and is currently transmitted and publicly available for the unauthorized commercial consumption, streaming, and viewing in violation of the Plaintiff's rights in the Registered Work under Section 512 of Digital Millenium Copyright Act, 17 U.S.C. § 512.

112. Upon information and belief, the Defendants' knowingly and materially misrepresented that the DMCA Takedown Notice provided by the Plaintiff was not in reference to

"material or activity" that is infringing as it is clear that the Defendants' usage are

infringing and that there is no plausible or reasonable "fair use" exemption existing in

direct violation of Section 512(f)(1) of the DMCA, 17 U.S.C. § 512(f)(1).

113. Upon information and belief, the Defendants further knowingly and materially

misrepresented that the DMCA Takedown Notice provided by the Plaintiff was submitted

by mistake or by misidentification by the Plaintiff in direct violation of Section 512(f)(2) of

the DMCA, 17 U.S.C. § 512(f)(2).

114. Upon information and belief, the Defendants acted with actual knowledge of the falsity of

the DMCA Counter-Notices filed by "Create Music Group," an authorized licensee of

Defendant EMPIRE, as it is undisputed that the Plaintiff was injured and harmed as a result

of the Defendants' infringing actions as the Plaintiff rightfully owns the Registered Work

contained in the Infringing Work and the Defendants actions were not protected by "fair

use."

115. Accordingly, under 17 U.S.C. § 512(f)(2), the Defendants are liable for the damages

suffered by the Plaintiff, including costs and attorneys' fees in an amount to be determined

at trial.

116. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to

cause the Plaintiff irreparable injury that cannot be fully compensated or measured in

monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §

512(j), the Plaintiff is entitled to a permanent injunction prohibiting and restraining the

third-party service providers from publicly displaying the Infringing Work containing the

Registered Work on the particular online site, or, in the alternative, terminating the

Defendants' accounts and providing the Plaintiff with the owed compensation in an amount

to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Trademark Infringement under 15 U.S.C. § 1125(c))**
**Against All Defendants**

117. Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

118. The Plaintiff is the owner of the CITO Trademark.

119. The CITO Trademark is distinctive and famous, and the CITO Trademark has been continuously used in commerce for the listed services for nearly a decade having been associated with millions of commissionable plays and views and associated with some of the world's artists musical acts.

120. Upon information and belief, the Defendants have, in connection with the commerce of selling, licensing, publicly performing, and displaying of the CITO Trademark to consumers for profit throughout the United States, including in New York, and have engaged in the unauthorized use of the Plaintiff's trademarks by incorporating the CITO Trademark without authorization or rights on all public materials, media, and press listings without proper authorization or permission from the Plaintiff.

121. The Defendants' unauthorized use of the CITO Trademark on the infringing musical compositions and recordings dilutes the quality of the CITO Trademark by tarnishment in violation of 15 U.S.C § 1125(c).

122. Upon information and belief, the Defendants are aware that the CITO Trademark is wrongfully attributed to the Defendants' Infringing Work as no proper rights or authorization have been secured from the Plaintiff to utilize the protected tradename and yet the Defendants continue to profit commercially from creating and attributing the

Infringing Work to the Plaintiff by labeling it with the Cito Trademark. As such,

Defendants have intentionally violated 15 U.S.C § 1125(c).

123. As an actual and proximate result of the unauthorized use of the Plaintiff's the CITO

Trademark, the Plaintiff has suffered and continues to suffer harm by, among other things,

damaging its reputation for accuracy, originality, and quality, which has and will continue

to cause it economic loss.

### <u>SIXTH CAUSE OF ACTION</u>
**(Violation of Right of Publicity under N.Y. Civil Rights Law § 50)**
**Against All Defendants**

124.    Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in

the preceding Paragraphs of the Complaint as if they were fully set forth herein.

125.    Upon information and belief, the Defendants, without the Plaintiff and/or CITO's consent

or approval, have and continue to publicly advertise and utilize the exclusive licensee of the

Plaintiff's CITO's name and likeness in violation of CITO's right of publicity, including by the

Defendants' intentionally and willfully publicly inserting CITO's protected name

"Citoonthebeat" on various publicly available commercialized exploitation containing the

Infringing Work in violation of the Right of Publicity under N.Y. Civ. Law § 50.

126.    The Defendants did not receive any written or other formal consent or authorization of

the Plaintiff to utilize CITO's artist name on the commercialized Infringing Work and as a result,

the Defendants have caused damage to and continue to damage the Plaintiff's business interests

due to the Defendants' unauthorized commercial usage of CITO's name.

127.    Upon information and belief, even after receiving written notice of the Defendants'

violations, the Defendants willfully and intentionally failed to remedy and continued with its

unauthorized usage of CITO's name without any compensation.

128.    By reason of the foregoing, the Plaintiff has been damaged by the Defendants' knowing

and intentional unauthorized usage of CITO's name in an amount to be determined at trial.

129.    By reason of the foregoing, the Defendants' conduct is causing, and unless enjoined by

this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated

or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to N.Y.

Civ. Law § 51, the Plaintiff is entitled to a permanent injunction prohibiting and restraining the

Defendants from publicly displaying CITO's name in connection with the Infringing Work.

### SEVENTH CAUSE OF ACTION
#### (Unjust Enrichment)
**Against All Defendants**

130.  Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in

the preceding Paragraphs of the Complaint as if they were fully set forth herein.

131.  The Defendants knowingly and intentionally licensed the Infringing Work containing the

Registered Work, and controlled licensing, mechanical licensing, and collection of royalties.

132.  The Defendants knowingly and intentionally signed mechanical licenses with record

labels authorizing the inclusion of the Infringing Work containing the Registered Work.

133.  The Defendants have benefitted substantially from and exploitation of the Infringing

Work containing the Registered Work.

134.  The Defendants have received a monetary benefit from the Infringing Work containing

the Registered Work in the form of licensing, mechanical licensing, and collection of royalties,

among other revenue.

135.  The Defendants accepted the benefits from exploitation of the Infringing Work

containing the Registered Work such that it would be inequitable for the Defendants to retain

the benefits received from the Infringing Work without fully compensating the Plaintiff for

unauthorized use of the protected compositions and recordings contained in Registered Work incorporated into the Infringing Work without compensation or written permission.

136.  The Plaintiff has been deprived of compensation associated with the protected compositions and recording contained in Registered Work incorporated into the Infringing Work.

137.  The Plaintiff has been deprived of its right to select a party to administer the catalog of the protected composition and recording in the Registered Work and to control the distribution, licensing, mechanical licensing, and collection of royalties related to the Registered Work.

138.  The Defendants have been unjustly enriched by exploitation of the Infringing Work including through the unauthorized administration of the catalog of the protected composition and recording contained in Registered Work that was incorporated into the Infringing Work, licensing, mechanical licensing, and collection of royalties.

139.  Accordingly, the Plaintiff is entitled to damages for the Defendants' unjust enrichment in an amount to be determined at trial and the Defendants should be required to disgorge their ill-gotten profits attributable to its infringement of the Infringing Work.

### EIGHTH CAUSE OF ACTION
#### (Declaratory Judgment)
#### Against All Defendants

140.      Plaintiff repeats, re-alleges, and incorporate by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

141.      As set forth above, the Defendants failed to provide the Plaintiff with any owed royalties or accounting statements even after receiving several notices of material breaches.

142.      Despite receiving numerous written notices and engaging in extensive email correspondence, the Defendants failed to cure or otherwise remedy any of the enumerated

breaches; and instead, the Defendants filed false DMCA Counter-Notices to challenge the validity of the DMCA Takedown Notices rightfully filed by the Plaintiff to enable the Defendants to continue its ongoing infringement of the recording and composition contained in the Registered Work owned by the Plaintiff which was incorporated by the Defendants into the Infringing Work without authorization or payment.

143.    In addition, the Infringing Work containing the Registered Work continues to be unlawfully monetized and exploited by the Defendants without any compensation or proper authorization from the Plaintiff including the Defendants failing to account to the Plaintiff.

144.    The Plaintiff is entitled to a declaration that the Defendants are improperly withholding royalties that belong to the Plaintiff.

145.    The Plaintiff is entitled to a declaration that the Defendants are improperly failing and refusing to render royalty accounting statements to the Plaintiff.

146.    The Plaintiff is entitled to a declaration that Defendants have willfully infringed Plaintiff's copyrighted work in violation of the Copyright Act in violation of 17 U.S.C. §§ 106 and 501.

147.    The Plaintiff is entitled to a declaration that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable.

148.    The Plaintiff is entitled to a declaration that Defendants are required to account for all profits, income, receipts, or other benefits derived by the Defendants as a result of its unlawful conduct.

149.    The Plaintiff is entitled to a declaration that the Plaintiff retains fifty (50%) percent of all rights to the underlying recording and composition contained in the Infringing Work.

150.     The Plaintiff is entitled to a declaration that the Plaintiff owns fifty (50%) percent of all rights in the composition and recording contained in the Infringing Work.

151.     The Plaintiff is entitled to a declaration enjoining the Defendants from further withholding the Plaintiff's royalties.

152.     The Plaintiff is entitled to a declaration enjoining the Defendants from refusing to render royalty accounting statements to the Plaintiff.

153.     The Plaintiff is entitled to a declaration enjoining the Defendants from publicly displaying the Infringing Work contained on any online sites, pursuant to 17 U.S.C. § 512(j).

154.     The Plaintiff is entitled to a declaration enjoining the Defendants from publicly displaying CITO's name in connection with the Infringing Work, pursuant to N.Y. Civil Rights Law § 51.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests and prays that judgment be entered against Defendants and for the following relief as follows:

1.  A declaration that:

    1.  The Defendants are improperly failing and refusing to render royalty accounting statements to the Plaintiff.

    2.  The Defendants have willfully infringed Plaintiff's copyrighted work in violation of the Copyright Act.

    3.  The Defendants are directly, vicariously, and/or contributorily liable for copyright infringement.

    4.  The Defendants are required to account for all profits, income, receipts, or other benefits derived by the Defendants as a result of its unlawful conduct.

5.  The Plaintiff retains fifty (50%) percent of all rights to the underlying recordings and compositions contained in the Infringing Work.

6.  The Plaintiff owns fifty (50%) percent of all rights in the composition and recording contained in the Infringing Work.

7.  The Defendants are enjoined from further withholding the Plaintiff's royalties.

8.  The Defendants are enjoined from refusing to render royalty accounting statements to the Plaintiff.

9.  The Defendants are enjoined from publicly displaying the Infringing Work contained on any online sites.

10. The Defendants are enjoined from publicly displaying CITO's name in connection with the Infringing Work.

2.  For judgment that Defendants have violated the Copyright Act and that all such violations have been willful;

3.  A permanent injunction requiring the Defendants and the Defendants' agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each and any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of the Plaintiff's rights protected by the Copyright Act;

4.  A permanent injunction prohibiting and restraining third-party service providers from publicly displaying the Infringing Work.

5.  A permanent injunction prohibiting and restraining the Defendants from publicly displaying CITO's name in connection with the Infringing Work.

6. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Defendants, including all profits and damages directly and indirectly arising from exploitation of the Registered Work, domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

1. Record sales;
2. Downloads
3. Ringtones;
4. Ringback tones;
5. Public performance revenues;
6. Digital revenue;
7. Streaming revenue;
8. Synchronization licensing;
9. Merchandising;
10. Public appearances;
11. Endorsements;
12. Sponsorships;
13. Spokesperson work;
14. Touring revenue;
15. Advertising revenue;
16. Appearance fees;
17. Name and likeness income and increase in value;
18. Rights of publicity income and increase in value;
19. Increased value in all Defendants' publishing and/or record company and/or companies;
20. Increased value of all Defendants' catalogues;
21. Increased value of music publishing and/or record royalties and rights;
22. Increased value of social media rights, accounts and value;
23. Increased goodwill;
24. Promotional value;
25. Increased value of royalty rate for record deals;
26. Increased value in distribution deals, negotiating power and reduction in costs;
27. Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;
28. Value of obtaining better terms for record company advances and terms and multi-record deals;
29. Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendant TROY AVE;

30. Increased value in negotiating 360 deals with record companies and/or publishers;
31. Sheet music sales and sheet folio income;
32. Any and all music publisher income;
33. Any and all record master income;
34. Any and all record income;
35. Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;
36. Any and all producer royalty income;
37. Any and all arrangement income;
38. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;
39. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;
40. Any and all income from any society to which any Defendant belongs or joins in the future;
41. Any and all income and/or residuals from SAG-AFTRA;
42. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services;
43. Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the Infringing Works in the service; and
44. Full payment of all royalties owed.

7.  In the alternative, an award of statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

8.  An award of compensatory and special damages, to be determined at trial;

9.  An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

10. An award of damages for unfair competition and misappropriation in an amount to be determined at trial but no less than $250,000.00;

11. An award of damages for misrepresentation pursuant to 17 U.S.C. § 512(f), including costs and attorneys' fees in an amount to be determined at trial but no less than

$250,000.00;

12. An award of damages for trademark infringement by dilution pursuant to 15 U.S.C. § 1125(c) in an amount to be determined at trial but no less than $300,000.00;

13. An award of damages for violation of the right of publicity under N.Y. Civ. Law § 50 in an amount to be determined at trial but no less than $350,000.00;

14. An award of damages for unjust enrichment in an amount to be determined at trial but no less than $500,000.00;

15. For pre-judgment and post-judgment interest according to law, as applicable; and,

16. For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
April 12, 2024

Respectfully submitted,

**JUSTIN JACOBSON LAW, P.C.**

By:

Justin M. Jacobson, Esq. (JJ-2022)
7 Penn Plaza, Suite #420
New York, NY 10001
Telephone: (516) 220-2911
Fax: (917) 970-2028
Email: justin@jmjesq.com

*Attorney for Plaintiff*
*In The Struggle Productions*
*Limited Liability Company*