**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE STRUGGLE PRODUCTIONS LLC,<br><br>Plaintiff,<br><br>- against -<br><br>ROLAND COLLINS P/K/A “TROY AVE;” and BSB RECORDS, INC.<br><br>Defendants. | No. 24-cv-2776 (JAV) |

**PLAINTIFF’S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF’S OPPOSITION TO DEFENDANTS ROLAND COLLINS P/K/A “TROY AVE” AND BSB RECORDS, INC.’S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS


**PRELIMINARY STATEMENT**........................................................................................ 1

**STATEMENT OF FACTS** ............................................................................................ 4

**ARGUMENT** ............................................................................................................ 8

**I. Legal Standards**

A. *Motion To Dismiss*........................................................................................... 8

B. *Summary Judgment*.......................................................................................... 9

**II. Plaintiff Is A Co-Owner of Chuck Norris.**......................................................... 10

A. *Plaintiff Acquired Co-Ownership of Chuck Norris From Sosa*........................... 10

B. *Plaintiff Is Entitled To An Accounting And Payment from Defendants For Defendants' Breach of Fiduciary Duty* ............................................................................ 14

**III. Defendants' Motion To Dismiss Should Be Denied In Its Entirety And Dismissed With Prejudice**…………………………………………………………………..…... 16

A. *Defendant BSB Records' Motion To Dismiss Is Improper*……………………………..…... 16

B. *Defendants' Motion To Dismiss Contains Fraudulent Statements In Violation of Fed. R. Civ. P. 11(b)(3)* …………………..…………..………………………………………………...... 17

C. *Defendants' Counterclaims and Affirmative Defense of Jurisdiction Fail Because Jurisdiction Is Valid and Defendants Have Presented No Evidence In Support of Its Counterclaims And Defendants Do Not Raise A Genuine Issue Of Material Fact And Plaintiff's Amended Complaint Presents Sufficient Facts To State a Plausible Claim To Relief Against Defendants Who Waived Its Other Affirmative Defenses*…..……………………………………………………………… 20

**CONCLUSION** ........................................................................................................ 23

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ............................................ 8, 9

*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)............................ 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)........................................ 8, 9

*Betances v. Fischer*, 707 F. Supp. 3d 279, 293 (S.D.N.Y. 2023) .................................... 11

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) .......................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)........................................................ 11

*Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) ... 22

*Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) ............................................................. 15

*Doubleday & Co., Inc. v. Curtis*, 763 F. 2d 495, 503 (2d Cir. 1985)............................ 21

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) ........................................ 23

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ........................ 13

*Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ....................................................... 11

*Huurman v. Foster*, No. 07-CV-9326 (S.D.N.Y. June 21, 2010) ..................................... 13

*In re Application of Cellco Partnership*, 663 F. Supp. 2d 363, 369 (S.D.N.Y. 2009) ................. 14

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 90, 95 (2d Cir. 2007)................................... 8

*Kahn v. Carlebach*, 19-CV-3855 (AMD) (JRC), 6 (E.D.N.Y. June 2, 2023) ............................ 13

*Marshall v. Marshall, 08-CV-1420 (LB)* (E.D.N.Y. Mar. 30, 2012) .......................................... 14

*Maurel v. Smith*, 271 F. 211, 216 (2d Cir. 1921) ........................................................... 15

*Maxwood Music Ltd. v. Malakian*, 713 F. Supp. 2d 327, 348 (S.D.N.Y. 2010) .......................... 14

*Membler.com LLC v. Barber*, 12-CV-4941 (JS)(GRB) (E.D.N.Y. Sept. 23, 2013) ............... 13, 16

*Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006)............... 10

*Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011) ....................... 11

*Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, No. 09-CV-5580, 2009 WL 3496115, at *2 (S.D.N.Y. Oct. 23, 2009) ........................................................................................ 16

*SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975) ........................................... 17

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ................................................................ 22

*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) ................................ 10

*Soley v. Wasserman*, 08 Civ. 9262 (KMW) (FM), at *4 (S.D.N.Y. June 21, 2013) ................... 17

*Staehr v. Hartford Financial Services Group, Inc.*, 547 F. 3d 406, 426 (2d Cir. 2008)............ 1

*Swift Spindrift Ltd. v. Alvada Ins. Inc.*, 175 F. Supp. 3d 169, 174 (S.D.N.Y. 2016)...................... 9

*Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) ........................................................ 13, 15

*Webber v. Dash*, 19-cv-610 (RWL), 2021 WL 3862704 (S.D.N.Y. Aug. 30, 2021) ................... 13

*White v. DistroKid*, 22-CV-2205 (VEC) (GWG) (S.D.N.Y. June 24, 2024) .............................. 14

*White v. UMG Recordings, Inc.*, 20-CV-9971, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) ........................................................................................................................... 4

**<u>STATUTES</u>**

17 U.S.C. § 512(f), (f)(2) ........................................................................................... 2, 3

17 U.S.C. § 512(g)(3)(D) ............................................................................................... 21

**<u>RULES</u>**

Fed. R. Civ. P. § 8(c) ..................................................................................................... 21

Fed. R. Civ. P. § 11(b)(3) .............................................................................................. 19

Fed. R. Civ. P. § 11(c)(3) ............................................................................................... 20

Fed. R. Civ. P. § 12(b)(6) ............................................................................................ 1, 8

Fed. R. Civ. P. § 12(d) ..................................................................................................... 1

Fed. R. Civ. P. § 56 (a) ..................................................................................................... 9

Local Rule 56.1 ................................................................................................................ 9

Plaintiff In The Struggle Productions LLC ("Plaintiff" or "ITS"), by and through its undersigned counsel, respectfully responds to Defendants Roland Collins p/k/a "Troy Ave" and BSB Records, Inc.'s Motion To Dismiss Complaint Pursuant to Fed. R. Civ. P. § 12(b)(6) (the "Motion To Dismiss") filed by Defendant Troy Ave p/k/a "Troy Ave" ("Troy Ave") and Defendant BSB Records, Inc. ("BSB Records") (collectively "Defendants") in the above-captioned matter.

**PRELIMINARY STATEMENT**

Plaintiff opposes Defendants' Motion To Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. §12(b)(6) as Plaintiff's Amended Complaint alleges sufficient facts to state a claim for which relief may be reasonably granted on its face. Moreover, pursuant to Fed. R. Civ. P. § 12(d), since Defendants' Motion To Dismiss pursuant to Fed. R. Civ. P. § 12(b)(6) presented "matters outside the pleadings," including providing evidence not submitted with Plaintiff's Amended Complaint and/or with Defendants' Answers in the form of declarations from Defendant Troy Ave and from non-party, Mr. Ruben D. Sosa, Jr., professionally known as "*Citoonthebeat*" ("Sosa"), Defendants' Motion To Dismiss "must be treated as one for summary judgment [since] matters outside the pleadings are presented and not excluded by the court," such as here. See *Staehr v. Hartford Financial Services Group, Inc.*, 547 F. 3d 406, 426 (2d Cir. 2008); *F.R.C.P. 12(d)*; ECF Dkt. Nos. 34, 71, 85, 92, 158, & 159. Under the summary judgment standard, Plaintiff's Amended Complaint also presents sufficient evidence to substantiate that there is no genuine dispute as to any material fact contained in Plaintiff's Amended Complaint so that Defendants' Motion To Dismiss must be denied in its entirety and dismissed with prejudice and Plaintiff's Motion for Default Judgment against Defendant BSB Records filed on October 30, 2025 (the "Motion for Default Judgment") and Plaintiff's Motion for Partial Summary

Judgment against Defendant Troy Ave filed on October 30, 2025 (the "Motion for Partial Summary Judgment") should both be granted as to Plaintiff's claim for an accounting from Defendants as a co-owner of a copyrighted work, "*Chuck Norris*"/ "*Chuck Norris" (Hoes & Gangstas)*" ("Chuck Norris") and for Plaintiff's claim against Defendants for Defendants' willful misrepresentations in violation of 17 U.S.C. §512(f)(2) and Defendant BSB Records has still failed to appear, answer, and/or otherwise engage in this proceeding. See ECF Dkt Nos. 151 & 152. Defendants' Motion To Dismiss should also be denied in its entirety and dismissed with prejudice. Plaintiff's Motion for Default Judgment against Defendant BSB Records and Plaintiff's Motion for Partial Summary Judgment against Defendant Troy Ave should both be granted because Defendants have not presented any facts to dispute or to otherwise invalidate any of Plaintiff's claims in its Amended Complaint; and, Plaintiff has presented evidence in support of each of Plaintiff's claims in its Amended Complaint. See ECF Dkt No. 151 & 152. Defendant Troy Ave admits that Defendant Troy Ave co-created Chuck Norris with Plaintiff's exclusive licensor Sosa providing Plaintiff with co-ownership rights in Chuck Norris and with proper standing to bring this suit. See Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (the "56.1 Statement"), ¶ 8. Defendants failed to account for and to provide Plaintiff with the compensation that it is owed as a co-owner of Chuck Norris from the unilateral exclusive commercial license that Defendants issued to Empire Distribution, Inc. ("Empire") for Chuck Norris on April 12, 2016. 56.1 Statement, ¶ 10. On June 6, 2016, Chuck Norris was publicly and commercially distributed by Empire for profit, amassing millions of compensated views solely paid to Defendants. 56.1 Statement, ¶ 11. Defendants also failed to keep and to provide Plaintiff with accurate information related to the income generated from Chuck Norris in violation of Defendants' fiduciary duty to Plaintiff. 56.1 Statement, ¶¶ 14-15.

Defendants widely publicized Plaintiff's exclusive licensor as the "producer" of Chuck Norris. 56.1 Statement, ¶ 12. Defendants' agents, on Defendants' behalf, wrongfully issued and materially misrepresented Defendants' rights in relation to Chuck Norris to Plaintiff's detriment and inflicting damage on Plaintiff in violation of 17 U.S.C. §512(f)(2) by opposing Plaintiff's validly issued "takedown" notices. 56.1 Statement, ¶ 17.

Defendants have also not presented any information to oppose Plaintiff's motions as Defendants failed to submit any competent evidence to create a genuine issue of material fact to support either Defendants' affirmative defenses or the counterclaims included in Defendant's Answer or to support any of Defendants' assertions contained in Defendants' Motion To Dismiss. See ECF Dkt. Nos. 92 & 157. Defendants have not submitted any valid declarations or any documents to substantiate Defendants' claim that Plaintiff does not have valid ownership rights as no such information exists. In fact, any provided declarations contain false statements that are readily contradicted by admissible evidence.

Accordingly, based on the evidence submitted, it is clear that Plaintiff possesses co-ownership rights to the copyrights contained in Chuck Norris. Defendants' Motion To Dismiss fails because there are no deficiencies in Plaintiff's Amended Complaint and there are no errors needing to be cured. 56.1 Statement, ¶¶ 49-50. Based on the admissible evidence, no reasonable person could find that Plaintiff and Defendants are not co-owners of Chuck Norris, thereby entitling Plaintiff to an accounting and payment of an equal share of all funds earned by Defendants from the unilateral exclusive licensing of Chuck Norris providing Defendants with substantial income and Plaintiff with nothing. Similarly, no party could have a reasonable belief that there was a good faith or any valid reason or "fair use" defense to submit the Counternotices issued by Defendants' agents under 17 U.S.C. §512(f) for a "mistake" or "misidentification" in

relation to Plaintiff's valid "takedown" notice for the unauthorized monetization of Chuck Norris. For these, and the reasons below, Defendants' Motion To Dismiss should be denied and dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

***Plaintiff and Chuck Norris.***

ITS is a limited liability company organized and existing under the laws of the state of New Jersey with a principal place of business located at 123 Town Square Place, Suite #107, Jersey City, NJ 07310. ITS was formed to act as a music publisher, music production, and music licensing company that exclusively represents notable music producers and musical recording artists including Mr. Ruben D. Sosa, Jr., professionally known as "*Citoonthebeat*" ("Sosa") for the sale, licensing, and distribution of musical compositions and sound recordings including Chuck Norris. Tres. Decl. at ¶1. Plaintiff received its exclusive co-ownership rights in the musical composition and sound recording contained in Chuck Norris from the exclusive rights assignment agreements with Sosa which were ratified and extended for many years beyond the initial term through Sosa's affirmative actions. Tres. Decl. at ¶18; Jac. Del. at ¶¶5-6. On June 9, 2019, Plaintiff registered the musical composition contained in Chuck Norris entitled "Light Up" with the United States Copyright Office (the "Copyright Office"), under registration number PA-2-190-139. Jac. Del. at ¶8. On January 7, 2025, Plaintiff registered the sound recording contained in Chuck Norris with the Copyright Office, under registration number SR-1-019-187. Jac. Del. at ¶8. Plaintiff's rights on Chuck Norris and Light Up are valid as Sosa affirmatively assigned any and all rights Sosa contained in Chuck Norris and/or Light Up to Plaintiff under its exclusive agreements which were both affirmatively extended by Sosa's continued and ongoing receiving the financial benefits of the agreement including Sosa receiving thousands of dollars over nearly a decade in addition to signing half a dozen "personal inducement" agreements confirming this

fact which were included in the music licensing agreements entered into by Plaintiff on behalf of Sosa. Jac. Del. at ¶ 6. The personal inducements specifically confirm Plaintiff's rights to Sosa's copyright in the work and the language also confirms Sosa's acceptance of Plaintiff's authority to act on its behalf. Jac. Del. at ¶ 6. For instance, one such "Inducement Agreement" signed by Sosa reads as follows:

> "*In order to induce ("Company") to enter into the foregoing agreement ("Agreement") with In The Struggle Productions, LLC* (Plaintiff) *("Lender"), the undersigned* (Sosa), *hereby:* […] *(b) assents to the execution of the Agreement and agrees to be bound by the terms and conditions thereof, including but not limited to each and every provision of the Agreement that relates to the undersigned in any way, directly or indirectly, the services to be rendered thereunder by the undersigned and restrictions imposed upon the undersigned in accordance with the provisions of the Agreement, and the undersigned* (Sosa) *hereby guarantees to Company the full and faithful performance of all the terms and conditions of the Agreement by Lender* (Plaintiff)…." (Jac. Del., Ex. B, p. 23).

Similarly, another "INDUCEMENT AND GUARNATEE" signed by Sosa reads as follows:

> "*The undersigned* (Sosa) *has read and understands the foregoing agreement and agrees to all of the terms and conditions thereof. The undersigned* (Sosa) *agrees to guarantee his performance, and all warranties, representations, covenants and agreements made by IN THE STRUGGLE PRODUCTIONS, LLC* (Plaintiff)*, under the foregoing agreement, and* (Sosa) *further agrees to look exclusively to IN THE STRUGGLE PRODUCTIONS, LLC* (Plaintiff) *for payment of all compensation (excluding publishing monies) due to him in connection with the performance of his services as set forth above in the agreement….*" (Jac. Del., Ex. B, p. 47).

Finally, another inducement signed by Sosa reads as follows:

> "*In order to induce ("Company") to enter into the foregoing agreement ("Agreement") with In The Struggle Productions, LLC* (Plaintiff) *("Productions"), the undersigned* (Sosa) *hereby: […] (b) Assents to the execution of the Agreement and agrees to be bound by the terms and conditions thereof applicable to Productions* (Plaintiff)*, including but not limited to, each and every provision of the Agreement that relates to the undersigned* (Sosa) *in any way, directly or indirectly, the services to be rendered thereunder by the undersigned and restrictions imposed upon the undersigned in accordance with the provisions of the Agreement, and* (Sosa) *hereby guarantees to Company the full and faithful performance of all the terms and conditions of the Agreement applicable to Productions by the undersigned and by Productions* (Plaintiff)…." (Jac. Del., Ex. B, p. 69).

These documents are undisputable and each of them contain execution dates that cover works prior to the creation of Chuck Norris and Light Up including a personal inducement signed as recently as the end of 2023 (many years after Defendant and Sosa created Chuck Norris). Jac. Del. at ¶ 6.

***Defendants Roland Collins p/k/a "Troy Ave" and Defendant BSB Records, Inc.'s Exclusive License for Chuck Norris.***

Defendant Collins is professional musician or "rap" or "hip-hop" artist "domiciled in New York" at 1548 Union Street, Brooklyn, NY 11213 and Collins is professionally known as "*Troy Ave*." 56.1 Statement, ¶¶ 4-5. Defendant BSB Records, Inc. is a corporation organized and existing under the laws of New York with a principal place of business located at P.O. Box 1951, Manhattanville Station, New York, NY 10027 and with registered agent located at c/o Fola Bell at P.O. Box 1951, Manhattanville Station, New York, NY 10027. 56.1 Statement, ¶ 6. By written agreement with Empire dated April 12, 2016 (the "Empire License Agreement"), Defendants exclusively licensed the copyright in Chuck Norris, among other works, to Empire for a territory including the United States for the "later of five (5) years or the full recoupment of the Advance" paid to Defendants under the Empire License Agreement. Jac. Del. at ¶11-12. On June 6, 2016, Chuck Norris was publicly exclusively commercially distributed by Empire pursuant to the rights granted by Defendants under the Empire License Agreement with all proceeds solely paid to Defendants. 56.1 Statement, ¶ 10; Jac. Del. at ¶12. To date, during the term of the Empire License Agreement, Defendants received "$95,800.73" (which continues to increase daily) while Plaintiff receives nothing. Jac. Del. at ¶12; Declaration of Michael Gallegus dated October 21, 2024 ("Dec. of Gallegus"), Ex. A. By letters dated April 20, 2019, May 3, 2019, July 8, 2022, and July 14, 2022 (the "Cease and Desist Letters"), Plaintiff, through their current and previous

counsel, advised Defendants of Plaintiff's beneficial copyright and co-ownership rights in Chuck Norris, of Defendants' failure to account, and of Defendants' violation of its fiduciary duties owed to Plaintiff. 56.1 Statement, ¶ 15; Jac. Del. at ¶14-15. Plaintiff also demanded that Defendants provide an appropriate accounting of profits related to Chuck Norris and provide Plaintiff with accurate information related to the sums earned by Defendants related to Chuck Norris which has yet to occur. 56.1 Statement, ¶ 15; Jac. Del. at ¶14-15.

***Procedural History.***

On April 12, 2024, this action commenced with the filing of the original complaint. 56.1 Statement, ¶ 20. On September 24, 2024, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. § 12(b)(6) ("September Motion to Dismiss"). 56.1 Statement, ¶ 21. On October 1, 2024, the September Motion to Dismiss was denied without prejudice. 56.1 Statement, ¶ 22. On October 1, 2024, the Court issued an order staying Defendants' time to answer pending settlement discussions with the Magistrate Judge (the "October 1 Order"). 56.1 Statement, ¶ 23. On January 8, 2025, the Court issued an order lifting the stay and prescribed the time for Defendants to answer the complaint as January 28, 2025. 56.1 Statement, ¶ 24. On January 27, 2025, the complaint was amended, adding new causes of action and the amended complaint was filed. 56.1 Statement, ¶ 20. On March 2, 2025, Defendants filed a second Motion to Dismiss pursuant to Fed. R. Civ. P. § 12(b)(6) (the "March Motion to Dismiss"). 56.1 Statement, ¶ 25. On March 6, 2025, the March Motion to Dismiss was denied. 56.1 Statement, ¶ 26. On March 21, 2025, Defendants filed Defendants' Answer with Counterclaims dated March 19, 2025. 56.1 Statement, ¶ 27. On March 26, 2025, Plaintiff filed its Reply to Counterclaims dated March 26, 2025. 56.1 Statement, ¶ 28. On June 21, 2025, Defendant Troy Ave served its response to Plaintiff's First Requests for Admissions on Plaintiff which was entitled "Defendant's First

Requests For Admissions" served on Plaintiff on June 21, 2025. 56.1 Statement, ¶ 29; Jac. Del. at ¶53. On October 30, 2025, Plaintiff filed a Motion for Partial Summary Judgment Against Defendant Troy Ave pursuant to Fed. R. Civ. P. § 56 (the "Summary Judgment Motion") and a Motion for Default Judgment Against Defendant BSB Records, Inc. (the "Default Judgment Motion"). See ECF Dkt. Nos. 151 & 152; Jac. Del. at ¶54. On October 30, 2025, Defendants filed a third Motion to Dismiss pursuant to Fed. R. Civ. P. § 12(b)(6) (the "Motion to Dismiss"). See ECF Dkt. No. 157; Jac. Del. at ¶54.

## ARGUMENT

### I. Legal Standards.

#### A. Motion To Dismiss.

A motion to dismiss under Fed. R. Civ. P. §12(b)(6) permits a court to dismiss a complaint when it "[fails] to state a claim upon which relief can be granted." See *F.R.C.P. §12(b)(6)*. In assessing the sufficiency of plaintiff's complaint, a court must "draw all inferences in the light most favorable to the non-moving party," the Plaintiff. See *In re NYSE Specialists Sec. Litig.*, 503 F.3d 90, 95 (2d Cir. 2007). Specifically, "a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is satisfied by a claim that has "facial plausibility which is where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See *Ashcroft v. Iqbal*, 556 U.S. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556). In the instances, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This analysis is based on a two-pronged test where a court

ruling on a defendant's motion to dismiss "must accept as true a Complaint's factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff." See *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). However, the complaint does not need provide detailed factual allegations, but it must instead sufficiently state the grounds for its claims "through factual allegations sufficient to raise a right to relief above the speculative level." See *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citations omitted). Moreover, the plaintiff must allege sufficient facts to "nudge[] their claims […] across the line from conceivable to plausible." See *Ashcroft v. Iqbal*, 556 U.S. at 1951. Accordingly, "[w]hen there are well-pleaded factual allegations," such as in this case, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." See *Ashcroft v. Iqbal*, 556 U.S. at 1950. Here, Plaintiff has presented extensive undisputed evidence in its Amended Complaint including its accompanying Exhibits as well as with its Motions filed in this matter to present sufficient facts that plausibly prove its claims.

**B. <u>Summary Judgment.</u>**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, a court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" when "reviewing the parties' submissions in the light most favorable to the non-moving party," which is the Plaintiff. See *Swift Spindrift Ltd. v. Alvada Insurance Inc.*, 175 F.Supp. 3d 169, 174 (S.D.N.Y. 2016). An issue of fact is only "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citation omitted). In this regard, a "fact is material if it might affect the outcome of the suit under the

governing law." See *Id.*. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, which Defendant has not. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon such a showing, "[t]he opposing party must then come forward with specific evidence establishing the existence of a genuine dispute; conclusory statements or mere allegations are not sufficient to defeat summary judgment." See *Betances v. Fischer*, 707 F. Supp. 3d 279, 293 (S.D.N.Y. 2023) (citation omitted). Here, Defendant has not provided any specific evidence that establishes the existence of a genuine dispute as to whether Plaintiff's claims are valid since they are. While a court must resolve ambiguities in the non-movant's favor, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." See *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); *Price v. Cushman & Wakefield, Inc.*, 808 F.Supp.2d 670, 685 (S.D.N.Y. 2011) ("[T]he non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial"). Here, Defendants have provided conjectures based on feigned declarations without specific evidence supporting Defendants' Motion To Dismiss.

## II. Plaintiff Is A Co-Owner of Chuck Norris.

### A. Plaintiff Acquired Co-Ownership of Chuck Norris From Sosa.

Plaintiff alleges it is a music production, sales, and licensing company that owns an exclusive license to the copyrights in Sosa's works. Tres. Decl. at ¶6. Plaintiff's rights include possessing exclusive ownership of the musical composition contained in "*Light Up*" and co-ownership rights with Defendants of the sound recording and the musical composition contained in Chuck Norris. Jac. Decl. at ¶3; Tres. Decl. at ¶6. Sosa conveyed Sosa's exclusive recording and publishing services to Plaintiff under the "Recording Agreement" and "Producer's Agreement"

between Sosa and Plaintiff (collectively the "Sosa Agreements"). Tres. Decl. at ¶18; Jac. Decl. at ¶4. The Sosa Agreements were subsequently extended until at least the end of 2023 through Sosa's ongoing ratification and acceptance of the financial benefits provided by Plaintiff with actual knowledge of the fact that the Sosa Agreements were still in effect and would remain so. Sosa ratified the extension of the Sosa Agreements for many years beyond the initial term evidenced through his acceptance of over $109,00.00 in additional monetary advances from Plaintiff from 2015 to 2023, including direct payments to Sosa for similar amounts, several times a month for years. Jac. Decl. at ¶5; Tres. Decl. at ¶¶19-20. As recently as November 21, 2023, Sosa also signed numerous "personal inducements" wherein he personally obligated himself and confirmed in each agreement the exclusive rights that Plaintiff possessed to Sosa's recording and publishing services enabling Plaintiff to execute these binding agreements on Sosa's behalf. Tres. Decl. at ¶26; Jac. Decl. at ¶6. Plaintiff's actions in these transactions were based on Plaintiff's reasonable reliance that the Sosa Agreements were in effect and extended. Tres. Decl. at ¶26. Also, in furtherance of the contractual relationship, Plaintiff spent thousands of additional dollars on recording studio fees on Sosa's behalf, including more than $15,000.00. Jac. Decl. at ¶5; Tres. Decl. at ¶22. In reliance of extension and enforceability of the Sosa Agreements, Plaintiff paid over $5,000.00 for music editing software fees and recording equipment for Sosa (which he still uses today). Jac. Decl. at ¶5; Tres. Decl. at ¶22. Plaintiff also paid additional sums on Sosa's behalf, including the legal fees owed for the registration of musical composition "*Light Up*" as well as for other attorneys' fees, marketing, and promotional costs related to the Sosa Agreements. Jac. Decl. at ¶5; Tres. Decl. at ¶19. The evidence supports the conclusion that Plaintiff co-owns Chuck Norris and owns Light Up defeating Defendants' contrary statements.

Courts "have long viewed songs as paradigmatic examples of 'joint work;'" thus, Chuck Norris is clearly co-owned by Plaintiff (as Sosa's exclusive licensee) and Defendants as no written agreement to the contrary exists. See *Kahn v. Carlebach*, 19-CV-3855, (AMD) (JRC), at *6 (E.D.N.Y. Jun. 2, 2023). Additionally, Plaintiff also satisfies the "two-pronged test" for determining "joint authors" further proving Plaintiff (as Sosa's exclusive licensee) and Defendants' co-ownership rights of Chuck Norris. See *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998). This test requires that each party: "(1) made independently copyrightable contributions to the work and (2) fully intended to be co-authors." See *Id.*. The first prong is satisfied as on Plaintiff's behalf, Sosa "'created and contributed at least some amount of original expression'" by providing the entire instrumental for Chuck Norris which is the Light Up work owned by Plaintiff. See *Webber v. Dash*, 19-cv-610 (RWL), 2021 WL 3862704, at *18 (S.D.N.Y. Aug. 30, 2021) citing *Feist Publications, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 345 (1991) ("the requisite level of creativity is extremely low; [so,] even a slight amount will suffice."). Additionally, it has been ruled that a producer, such as Sosa, "made independently copyrightable contributions [when he] assisted in producing and recording […a] song (Chuck Norris) and contributed to the […] musical compositions (Light Up) and such alleged contributions suggest 'some minimal degree of creativity." See *Membler.com LLC v. Barber*, 12-CV-4941(JS)(GRB), at *15 (E.D.N.Y. Sep. 23, 2013) citing *Huurman v. Foster,* No. 07-CV-9326, at *12 (S.D.N.Y. June 21, 2010). The second prong is also satisfied as it mandates "a specific finding of mutual intent." See *Thomson*, 147 F.3d at 202. Based on Defendant Troy Ave and Sosa's own declarations, the parties mutually intended to, and both stated that they "collaborate[d]" on the creation of the Chuck Norris. See ECF Dkt. Nos. 34, 35, 85, 86, 158, & 159; Jac. Decl. at ¶¶10, 53; Tres. Decl. at ¶13. In particular, "[t]he evidence to be weighed […]

var[ies] with each case," including examining "the way in which the parties bill or credit themselves." See *Marshall v. Marshall*, 08-CV-1420 (LB), at *18 (E.D.N.Y. Mar. 30, 2012); *White v. Distrokid*, 22-CV-2205 (VEC) (GWG), at *8 (S.D.N.Y. Jun. 24, 2024). For instance, "the manner in which the parties bill or credit themselves is a window [into] the mind of the party who is responsible for giving the billing or the credit." See *Maxwood Music Ltd. v. Malakian*, 713 F. Supp. 2d 327, 48 (S.D.N.Y. 2010) (citing *Thomson*, 147 F. 3d at 203). Here, Defendant Troy Ave's own admissions in his Answer confirm that Defendants specifically credited Sosa as the "producer" of Chuck Norris by publicly crediting him as the "producer" of the song in all distributed promotional materials. See ECF Dkt No. 92; Jac. Dec. at ¶13. Defendants' affirmative billing of Sosa as the producer of Chuck Norris further establishes Defendants' intent. Finally, since Plaintiff paid all the costs associated with the recording studio session for Chuck Norris, including the recording equipment and editing software used by Sosa, and studio time where Chuck Norris was created; thus, Plaintiff co-owns Chuck Norris as it is established that "'[t]he author of a musical composition is generally the composer'" and "'[t]he author of a sound recording is […] the record producer who processes the sounds and fixes them in the final recording, or both,'" which is what Sosa did on Plaintiff's behalf. See *In re Application of Cellco Partnership*, 663 F. Supp. 2d 363, 369 (S.D.N.Y. 2009); Jac. Dec. at ¶5; Tres. Decl. at ¶22. Therefore, it is clear that Plaintiff and Defendants are co-owners of Chuck Norris and that Defendants' claims in its Motion To Dismiss fail because Plaintiff does "have valid ownership rights in U.S. Copyright Registration No. PA-2-190-139" as evidenced from the documents presented in this matter. It is also clear that Defendants admitted that "CITO (Sosa) [is] the true author and creator of the *Light Up* musical composition and Defendants TROY AVE® and BSB Records mutually agreed to create a derivative work in the *Chuck Norris* song

(Chuck Norris) recorded and released by Defendants TROY AVE® and BSB Records" which was then exclusively licensed to Empire. Such statements further substantiate the rights that Plaintiff, as the rightful exclusive licensee of Sosa's rights, has in "the *Light Up* musical composition" and in the "derivative work in the *Chuck Norris* song (Chuck Norris)" that was "mutually" "create[d]" by the parties. Therefore, Defendants' claims in its Motion To Dismiss fail and Defendants' Motion To Dismiss should be dismissed in their entirety with prejudice.

**B. Plaintiff Is Entitled To An Accounting And Payment from Defendants For Defendants' Breach of Fiduciary Duty.**

Plaintiff is entitled to an accounting and payment from Defendants for Plaintiff's equal share earned by Defendants' exclusive licensing of Chuck Norris to Empire since it is established that Plaintiff is a co-owner of Chuck Norris. Accordingly, "[j]oint authorship entitles the co-authors (Plaintiff and Defendants) to equal undivided interests in the whole work [… so,] each joint author (Plaintiff and Defendants) has the right to use or to license the work (Chuck Norris) […], subject only to the obligation to account to the other joint owner for any profits that are made," including from the Empire Licensing Agreement which do not occur. See *Thomson*, 147 F.3d at 199. Thus, an "owner may not, […] convey the interests of his fellow co-owners without their express written consent, even if the transferee has no notice of the non-consenting owners' interest," which is what Defendants did. See *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). Moreover, "a co-owner who grants a non-exclusive license is accountable to his co-owner for income gained by the grant of the license." See *Id.* at 100. Also, "a co-owner cannot unilaterally grant an exclusive license," which is what Defendants wrongfully engaged in. See *Id.* at 101 citing *Maurel v. Smith*, 271 F. 211, 216 (2d Cir. 1921) ("Where two or more persons have a common interest in a property, equity will not allow one to appropriate it exclusively to himself, or to impair its worth as to others."). Here, Chuck Norris was publicly distributed and

exclusively commercially licensed to Empire by Defendants without compensation to Plaintiff and/or Plaintiff's approval. Jac. Dec. at ¶¶11, 12. Defendants owed a fiduciary duty to accurately account to Plaintiff for the sums made from Chuck Norris as well as owed a duty to Plaintiff to keep and to provide correct and complete information related to the income due to Plaintiff from Chuck Norris. Jac. Dec. at ¶10. Plaintiff demanded an accounting and to receive accurate information from Defendants on multiple occasions with no avail. Jac. Dec. at ¶¶14, 15. No income has been paid to Plaintiff from the exclusive license issued by Defendants to Empire despite new income accruing daily. Since a co-owner cannot unilaterally grant an exclusive license and Defendants unilaterally exclusively licensed Chuck Norris to Empire as established by the facts presented, Defendants previously and continue engaging in ongoing violations of Plaintiff's rights in Chuck Norris as no accurate accounting, information, and/or monies were paid to Plaintiff for the previous and new income earned while Defendants continue to earn additional sums daily. Jac. Dec. at ¶56. Therefore, a "duty to account action under the Copyright Act lies when a co-author exploits the work in question but declines to share royalties with his co-author," which happened here. See *Membler.com LLC v. Barber*, 12-CV-4941(JS)(GRB), at *22 (E.D.N.Y. Sep. 23, 2013) citing *Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, No. 09-CV-5580, 2009 WL 3496115, at *2 (S.D.N.Y. Oct. 23, 2009). "Although the Copyright Act provides for a potential claim of accounting, […] state law principles still apply." See *Membler.com LLC*, 12-CV-4941(JS)(GRB) at *22. Plaintiff has established Defendants' duty to account to Plaintiff as co-owner of Chuck Norris sufficiently through the evidence presented in this matter. Plaintiff has still yet to receive an accurate accounting, information, and/or any funds due from Defendants despite requesting the same on multiple occasions and despite Defendants owing a duty to "keep" and "convey accurate information" related to the funds earned from the

exclusive licensing of Chuck Norris, including by providing and maintaining "complete records concerning the transactions entrusted" to Defendants which Defendants did not. See *Soley*, 08 Civ. 9262 (KMW) (FM), at *5 (citations omitted); Jac. Dec. at ¶¶14, 56. Defendants owed a duty to account for income and to keep and convey accurate and complete information and records to Plaintiff about the income and status of the funds earned from Chuck Norris. See *Soley*, 08 Civ. 9262 (KMW) (FM), at *5. Defendants breached this duty by continually refusing and failing to provide Plaintiff with any information regarding the status and the amounts of income generated from Chuck Norris as well as by not providing any accounting of the funds owed to Plaintiff despite Plaintiff's repeated written requests. See *Id.* The breach of the fiduciary duty was a "substantial factor contributing to plaintiff's injury" and it was the "'but for and proximate cause of'" Plaintiff's damage as but for Defendants' repeatedly and ongoing failure to account for and failure to provide accurate information on the amounts generated from Chuck Norris, Plaintiff would not have suffered any damage at all and Plaintiff would have received its justly owed compensation as well as received the accurate information substantiating the source of the income. See *Id.* at *6 (citations omitted). Accordingly, Plaintiff has sufficiently stated factual allegations that plausibly substantiate the claims contained in Plaintiff's Amended Complaint. Therefore, Defendants' Motion To Dismiss should be denied in its entirety and dismissed with prejudice.

## III. Defendants' Motion To Dismiss Should Be Denied In Its Entirety And Dismissed With Prejudice.

### A. Defendant BSB Records' Motion To Dismiss Is Improper.

It is clear that Defendant BSB Records' filing of the Motion To Dismiss is improper. Therefore, any motion made by Defendant BSB Records, including the Motion To Dismiss, should be denied in its entirety with prejudice and the pending Motion for Default Judgment

against Defendant BSB Records should be entered. Specifically, since Defendant BSB Records is a corporation, "it is settled law that a corporation cannot generally appear in federal court except through its lawyer." See *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975). To date and despite this Court ordering Defendant BSB Records to do so on numerous occasions, Defendant BSB Records has still not retained counsel. See ECF Dkt. No. 43 & 80. Therefore, it would be improper for Defendant BSB Records' Motion To Dismiss to be entertained and it should be denied in its entirety and dismissed with prejudice. Defendant BSB Records was also ruled in default in this matter. Jac. Dec. at ¶50.

**B. Defendants' Motion To Dismiss Contains Fraudulent Statements In Violation of Fed. R. Civ. P. 11(b)(3).**

Here, Defendants have submitted a declaration to support Defendants' Motion To Dismiss that violates Fed. R. Civ. P. § 11(b)(3). See *F.R.C.P. §11(b)(3)*. Specifically, Defendants "present[ed] to the court […a paper]," the declaration of Mr. Ruben D. Sosa, Jr. dated "October 30, 2025", presented with Defendants' Motion To Dismiss, that contained apparent false statements. See *F.R.C.P. 11(b)(3)*; ECF Dkt. No. 159. [1] In fact, the declaration of Mr. Ruben D. Sosa, Jr. submitted with the September Motion to Dismiss filed on September 24, 2024, and the declaration of Mr. Ruben D. Sosa, Jr. submitted with the March Motion to Dismiss filed on March 2, 2025, both contained the same execution date of "22nd day of September 2024" (September 22, 2024) (collectively the "Original Sosa Declarations"). See ECF Dkt. Nos. 34 & 86. Interestingly and in apparent violation of Fed. R. Civ. P. 11(b)(3), the "*DECLARATION of*

---

[1] ECF Dkt. No. 159 is wrongly labelled as "*DECLARATION of ROLAND COLLINS IN SUPPORT OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*" when it actually contains the "*DECLARATION of RUBEN D. SOSA, JR. in Support OF DEFENDANT'S ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*." Defendants did not upload any other declarations including a declaration for Defendant Roland Collins as previously submitted by Defendants with the September Motion to Dismiss and the March Motion to Dismiss.

*RUBEN D. SOSA, JR. in Support OF DEFENDANT'S ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*" (the "Altered Sosa Declaration") submitted by Defendants with Defendants' Motion To Dismiss on October 30, 2025 was wrongly labelled as "*DECLARATION of ROLAND COLLINS IN SUPPORT OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*." See ECF Dkt. No. 159. In addition, and in apparent violation of Fed. R. Civ. P. 11(b)(3), the Altered Sosa Declaration contains a different execution date from date from the date listed in the Original Sosa Declarations (September 22, 2024), as the Altered Sosa Declaration lists a different and later an execution date of "October 30, 2025" (the "Altered Sosa Declaration") instead of "September 22, 2024" which is the execution date for the Sosa Declaration submitted in support of the September Motion to Dismiss and the March Motion to Dismiss. See ECF Dkt. Nos. 35, 86, & 159. The date listed on the Altered Sosa Declaration seems to contain a willful alteration and deletion to replace the previous date listed on the Original Sosa Declarations ("September 22, 2024") with a different date ("October 30, 2025"). See ECF Dkt. Nos. 35, 86, & 159. In fact, the execution date on the Altered Sosa Declaration is written in pen in a "whited-out" space where the previous date ("September 22, 2024") contained in the Original Sosa Declarations seemed to be. See ECF Dkt. No. 159. Also, the entire contents of both the Original Sosa Declarations and the Altered Sosa Declaration are entirely typed and contain the same content, including the date listed in the Original Sosa Declarations; however, the Altered Sosa Declaration, while still containing a fully typed declaration that exactly mirrors the content of Original Sosa Declarations, the Altered Sosa Declaration now has a different handwritten date ("30th day of October, 2025") that is over a year later from the Original Sosa Declarations' execution date ("22nd day of September 2024"). See ECF Dkt. Nos. 35, 86, & 159. Another fact supporting the willful alteration by Defendants is

that there is another handwritten edited execution date contained in "*MEMORANDUM OF LAW in Support OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS COMPLAINT*" (the "Troy Ave Memo") that is written in the same or reasonable similar handwriting to the one included in the Altered Sosa Declaration. See ECF Dkt. No. 158. The content of the Troy Ave Memo mirrors Defendants' previous September Motion to Dismiss and March Motion to Dismiss Memos which were all entirely typed other than the handwritten date contained in the Troy Ave Memo filed with Defendants' Motion To Dismiss which changed the execution date to "October 30, 2025" from its original date. See ECF Dkt. No. 158. Upon a clear inspection, it is reasonably apparent that the date change was made by the same individual as the handwriting included in the Altered Sosa Declaration and the Troy Ave Memo are the same. See ECF Dkt. Nos. 157, 158 & 159. It is clear that, in violation of Fed. R. Civ. P. §11(b)(3), Defendants' improperly tampered with or otherwise edited the Altered Sosa Declaration to change its date (and potentially its content at some point) and submitted this forged declaration in support of Defendants' Motion To Dismiss by affirmatively "signing, filing, and submitt[ing]" it to this Court without any "evidentiary support" and to simply "harass, cause unnecessary delay," and "needlessly increase the cost of litigation" due to Defendants' presenting fraudulent evidence containing false statements readily contradicted by substantial evidence and which such evidence was affirmatively doctored to contain a new date and seems to present the only plausible defense (which Plaintiff has affirmatively disproven). See *F.R.C.P. 11(b)(3)*. Based on these facts, the Altered Sosa Declaration accompanying Defendants' Motion To Dismiss with the "October 30, 2025" listed date was either the original declaration that was altered by Defendants to be submitted to support Defendants' Motion To Dismiss, or the declaration is a second declaration issued by Sosa that contains the same perjurious statements as those included in the first ones as

the Troy Ave Memo refers to the Altered Sosa Declaration but states the previous date (i.e., "In ¶4 of CITO's September 22, 2024 Declaration…") instead of listing the later date for the declaration accompanying Defendants' Motion To Dismiss (October 30, 2025). See ECF Dkt. No. 157. Such actions, if true, are willful misrepresentations to this Court causing Plaintiff's costs to continually increase while also intending to unnecessarily delay the resolution of this matter. Such actions could subject Defendants to sanctions under Fed. R. Civ. P. 11(c)(3) if this Court deems it fit and proper. See *F.R.C.P. 11(c)(3)*. Also, it is perplexing that Defendants, including Defendant Troy Ave, failed to submit a declaration in support of Defendants' Motion To Dismiss despite previously submitting declarations to support Defendants' previous motions to dismiss as the document filed with the Court was a duplicate copy of Troy Ave Memo and it was not Defendant Troy Ave's declaration or any declaration in support of the Defendants' Motion To Dismiss as identified in the ECF filings. See ECF Dkt. Nos. 34, 85, 157, 158, & 159. [2]

**C. Defendants' Counterclaims and Affirmative Defense of Jurisdiction Fail Because Jurisdiction Is Valid and Defendants Have Presented No Evidence In Support of Its Counterclaims And Defendants Do Not Raise A Genuine Issue Of Material Fact And Plaintiff's Amended Complaint Presents Sufficient Facts To State a Plausible Claim To Relief Against Defendants Who Waived Its Other Affirmative Defenses.**

There is no evidence to support Defendants' "jurisdiction" defense and Defendants have not and Defendants will not "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to substantiate this defense or any other defense. See *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations

[2] For further clarification, ECF Dkt No. 158 is labeled "*DECLARATION of RUBEN D. SOSA, JR. in Support OF DEFENDANT'S ROLAND COLLINS AND BSB RECORDS, INC.'S*", but it is "*MEMORANDUM OF LAW in Support OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS COMPLAINT*." ECF Dkt No. 159 is labeled as "*DECLARATION of ROLAND COLLINS IN SUPPORT OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*" but it is "*DECLARATION of RUBEN D. SOSA, JR. in Support OF DEFENDANT'S ROLAND COLLINS AND BSB RECORDS, INC.'S*." Despite being labelled as such, there is no "*DECLARATION of ROLAND COLLINS IN SUPPORT OF DEFENDANTS ROLAND COLLINS AND BSB RECORDS, INC.'S MOTION TO DISMISS*" presented to support the Defendants' Motion To Dismiss.

omitted). In fact, Defendant BSB Records is a New York corporation incorporated under the laws of New York and with a principal place of business in New York subjecting it to jurisdiction in New York courts. See 56.1 ¶6; Jac. Dec. at ¶ 27. Moreover, Defendant Troy Ave is domiciled in New York as Troy Ave is currently residing at 1548 Union Street in Brooklyn, New York and Defendant Troy Ave also affirmatively admitted to the existence of "jurisdiction" over Defendant Troy Ave. See 56.1 ¶4-5; Jac. Dec. at ¶ 26. Similarly, 17 U.S.C. § 512(g)(3)(D) provides jurisdiction over Defendants BSB Records and Troy Ave due to Defendants submitting a counter-notification in response to Plaintiff's validly issued "takedown" notice. See *17 U.S.C. § 512(g)(3)(D)*; Jac. Dec. at ¶¶ 26-27.

Also, due to the filing of Defendants' Motion To Dismiss, Defendants have waived the right to present any other or any additional affirmative defenses not previously raised as "a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." See *Doubleday & Co., Inc. v. Curtis*, 763 F. 2d 495, 503 (2d Cir. 1985); *F.R.C.P. 8(c);* ECF Dkt. No. 71. Thus, Defendants' Motion To Dismiss should be denied in its entirety and dismissed with prejudice as there is no genuine issue of material fact that can defeat Plaintiff's claims contained in Plaintiff's Amended Complaint which sufficiently states plausible facts that demonstrate a valid claim for relief against Defendants. Defendants have not submitted any competent evidence to support Defendants' Counterclaims and Defenses or to support the contentions contained in Defendants' Motion To Dismiss other than feigned and contradicted testimony from Sosa and Defendant Troy Ave, who also admitted that jurisdiction exists over Defendant Troy Ave contrary to signed statements contained in Defendants' Answer filed in this matter. 56.1 Statement, ¶5. Accordingly, Defendants have failed to prove or raise any question of material fact in Defendants' Counterclaims and Defenses or to support Defendants' Motion to Dismiss and

Defendants have also failed to show that Plaintiff's Amended Complaint does not provide sufficient facts to plausibly state a claim for which relief may be granted or that there is no genuine issue in dispute. Jac. Dec. at ¶ 55. Because Defendants have not submitted any competent to support Defendants' Counterclaims and Defenses or to support Defendants' Motion to Dismiss and Defendants did not show that Plaintiff's Amended Complaint does not provide sufficient facts to plausibly state a claim for which relief may be granted, Defendants' Motion To Dismiss must be dismissed in its entirety and denied with prejudice. It is clear that Plaintiff has met its burden to establish the absence of a genuine dispute of material facts and Plaintiff has also shown facts sufficient to plausibly state a claim for which relief may be granted. Thus, the burden shifts to Defendants to come forward with sufficient evidence to raise a question of fact as to each essential element of Defendants' claims in Defendants' Motion To Dismiss, which Defendants have not done and cannot do, as Defendants have presented no competent evidence to establish or prove any of Defendants' claims and no submitted evidence has identified any specific facts as the only submitted declarations are contradicted by other admissible evidence and seem to contain forgeries. See *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Instead, the non-movant must produce specific facts indicating that a genuine factual issue exists."). It is clear that no genuine issue exists as Defendant has only provided "blanket denials," such as those contained in Defendants' Motion To Dismiss and in Defendants' Answer with Counterclaims dated March 19, 2025, and such "wholesale evidentiary objections, and counterstatements unsupported by any citations are insufficient to create genuine issues of material fact". See ECF Dkt. No. 92; *Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (rejecting "blanket denials" when unsupported by any citations to evidence).

Specifically, Defendants' Answer to Plaintiff's Amended Complaint contained only general denials, with some even contradicted by Defendant's own statements, rendering Defendants' Answer to Plaintiff's Amended Complaint inadequate and clearly not presenting a genuine or any issue of material fact to dispute those claims validly and plausibly raised in Plaintiff's Amended Complaint. See *Enron Oil Corp. v. Diakuhara*, 10 F. 3d 90, 98 (2d Cir. 1993). It is clear that Defendants' Motion To Dismiss also does not present any evidence supporting the assertion that Plaintiff's Amended Complaint does not state plausible and sufficient facts to state a claim for relief when Plaintiff's Amended Complaint clearly does.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion To Dismiss should be denied in its entirety and dismissed with prejudice, Plaintiff's Motion For Default Judgment against Defendant BSB Records, Inc. should be granted, Plaintiff's Motion For Partial Summary Judgment Against Defendant Troy Ave should be granted, and Plaintiff respectfully requests that the Court grant any other relief this Court deems just including appropriate sanctions under F.R.C.P. 11.

Dated: November 21, 2025

Respectfully Submitted,

By: /Justin M. Jacobson/

Justin M. Jacobson, Esq. (JJ 2022)
**JUSTIN JACOBSON LAW, P.C.**
347 Fifth Avenue, Suite #1402-115
New York, NY 10016
Tel.: (516) 220-2911
Fax: (917) 970-2028
Email: justin@jmjesq.com

*Attorney for Plaintiff*